# EXHIBIT
# 1

2013-08-23 14:07   B,S,G,F & D, llp                 1 >>      301 294 0737  P 1/5

# IN THE UNITED STATES DISTRICT COURT FOR MARYLAND
## (Northern Division)

MARY CLARK                          :

    Plaintiff,                  :

V.                                  : CASE NO.: 1:13-CV-00184 ELH

HOWARD COUNTY GENERAL               :
HOSPITAL, et al.

    Defendants.                 :


## PLAINTIFF'S RULE 26(a)(2) DISCLOSURES

Plaintiff, Mary Clark, by undersigned counsel, hereby submits their Fed. R. Civ. P. 26(a)(2) disclosures as follows:

1.    Russell A. Williams, M.D.
    Department of Surgery
    University of California, Irvine
    UCI Medical Center
    Orange, CA 92868

Dr. Williams is board certified in general surgery and vascular surgery and will be testifying in his capacity an expert witness. In addition to his surgical training, Dr. Williams has written and lectured on the subject of surgical fires and surgical burns. He is expected to testify based on his background, knowledge, education, training and experience, the history provided by the Plaintiff, Mary Clark, as well as, his review of the records of medical treatment.

Specifically, among other things, Dr. Williams will testify that the Defendants, their agents, servants, and/or employees breached the applicable standards of medical

1

DEFENDANT'S
EXHIBIT

1

care as to Plaintiff Mary Clark when they created a favorable environment for a surgical burn and in not taking steps to lessen the chances of such an event from occurring. Dr. Williams is expected to further testify that the negligence of each of the Defendants, their agents, servants and/or employees, directly and proximately caused the Plaintiff to suffer a severe injury resulting in medical bills, as well as damages of scaring and significant pain and suffering. Dr. Williams will also testify that the Defendants' negligence proximately caused Plaintiff to suffer mental anguish, permanent impairment and disfigurement. Additionally, it is expected that Dr. Williams will testify that the Defendants collectively lacked personnel training on operating room fires/burns, used improper surgical techniques and failed to have proper communication between all of the operating room staff. The basis for Dr. Williams' opinions include, among other things, the medical records of Mary Clark, the operation manual for the lighted retractor used during Ms. Clark's procedure as well as, the depositions and discovery taken and provided to date and what may be produced, the opinions of other experts, any applicable literature and his knowledge, education and experience as a surgeon. Dr. Williams may supplement his opinion as discovery in the case progresses and additional documents, including deposition transcripts become available for his review. Dr. Williams' curriculum vitae is attached hereto as an exhibit.

In particular and to expand on what was stated above, Dr. Williams will testify that it was a breach in the standard of care to lay electro-surgical equipment, such as the lighted retractor, on the patient's body during surgery. When the lighted retractor was not in use, both the standard of care, as well as the manufacture's instructions, require that it be placed out of the surgical field in a proper holster and/or a metal table. It is

further a deviation from the standard of care to ensure that the settings on the lighted

retractor were proper given the type of surgery that was being performed on Ms. Clark.

2.      Dawn J. Leonard, M.D.
        Medical Director, Herman & Walter Samuelson Breast Care Center
        5401 Old Court Road
        Randallstown, MD 21133

Dr. Leonard is board certified in general surgery with a sub-specialty in breast

surgery and will be testifying in her capacity a hybrid expert and fact witness. Dr.

Leonard treated the Plaintiff, Mary Clark with respect to her underlying breast cancer

diagnosis, follow up and treatment. Following the surgery by Dr. Chang wherein Ms.

Clark sustained the surgical burns, Dr. Leonard, after examining the burns, prescribed

silicone pads in an effort to reduce the visibility of the scar and to "keep them from

rising". Dr. Leonard is further expected to further testify that the negligence of each of

the Defendants, their agents, servants and/or employees, directly and proximately caused

the Plaintiff to suffer a severe injury resulting in medical bills, as well as damages of

scaring and significant pain and suffering. Dr. Leonard will also testify that the

Defendants' actions proximately caused Plaintiff to suffer mental anguish, permanent

impairment and disfigurement.

The Plaintiff reserves the right to call any of her treating health care providers as

hybrid expert/fact witnesses. The Plaintiff further reserves the right to call any expert

witness disclosed by any other party in this case.

The Plaintiff reserves the right to call the Defendants regarding testimony as to

the reasonableness of the medical treatment and billing statements.

The Plaintiff reserves the right to call additional rebuttal witnesses.

2013-08-23 14:07    B,S,G,F & D, llp                    1 >>    301 294 0737 P 4/5

As discovery is in its early states, the Plaintiff reserves the right to amend this list by addition or substituting witnesses, or both.

RESPECTFULLY SUBMITTED,

BERMAN, SOBIN, GROSS,
FELDMAN & DARBY, LLP

Kenneth M. Berman, Esquire
Federal Bar No. 8529
481 North Frederick Ave., # 300
Gaithersburg, Maryland 20877
(301) 670-7030
kberman@bsgfdlaw.com
Attorney for Plaintiffs

4

I HEREBY CERTIFY that on this _27_ day of August, 2013, a copy of

the foregoing was sent via facsimile and First Class, US Mail, postage prepaid

and addressed as follows:

Larry D. McAfee, Esq.
Gleason, Flynn, Emig & Fogleman, Chtd.
11 N. Washington Street, Suite 400
Rockville, MD 20850-4278
Attorney for Columbia Aesthetic Plastic Surgery, LLC and Eric Chang, M.D.

Francis X. Leary, Esq.
401 Washington Street, Suite 1100
Towson, MD 21204
Attorney for Howard County General Hospital

BERMAN, SOBIN, GROSS,
FELDMAN & DARBY, LLP

Kenneth M. Berman, Esquire
Federal Bar No.8529
481 North Frederick Ave., # 300
Gaithersburg, Maryland 20877
(301) 670-7030
kberman@bsgfdlaw.com
Attorney for Plaintiffs

5

# EXHIBIT
# 2



GLEASON FLYNN
EMIG & FOGLEMAN, CHARTERED

ATTORNEYS AT LAW

Larry D. McAfee
*Member*
Admitted MD • DC
lmcafee@gleason-law.com

August 27, 2013

Kenneth Berman, Esquire
Berkman, Sobin, Gross, Feldman & Darby, L.L.P.
481 North Frederick Avenue
Gaithersburg, MD 20877

Re: **Mary Clark v. Eric Chang, M.D., *et al.***

Dear Ken:

I am in receipt of Plaintiff's Rule 26(a)(2) Disclosures filed in the above-referenced case. However, Plaintiff's Rule 26(a)(2) Disclosures do not comply with the Federal Rules of Civil Procedure's specific requirements for disclosure of expert testimony during the discovery period. Plaintiff's failure to provide the requisite information in her Rule 26(a)(2) Disclosures makes it impossible for me to properly and sufficiently prepare to depose these witnesses. Accordingly, please provide a Rule 26(a)(2) Disclosures in compliance with the Federal Rules of Civil Procedure.

Sincerely,

Larry D. McAfee (by ksk)

LDM/KSK/mp
cc: Francis X. Leary, Esq.

DEFENDANT'S
EXHIBIT
2

11 NORTH WASHINGTON STREET
SUITE 400
ROCKVILLE, MARYLAND 20850-4278

TELEPHONE: 301.294.2110
FACSIMILE: 301.294.0737
WWW.GLEASONFLYNNEMIGFOGLEMAN.COM

# EXHIBIT
# 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

MARY CLARK                              :
                                        :
    Plaintiff,                          :
                                        :
                                        : CASE NO.  13-CV-0184 ELH
    V.                                  : The Honorable Ellen Lipton Hollander
                                        :
HOWARD COUNTY GENERAL                   :
HOSPITAL, et al.                        :
                                        :
    Defendants.                         :

<u>**COLUMBIA AESTHETIC PLASTIC SURGERY, LLC'S AND ERIC CHANG,**
**M.D.'S EXPERT WITNESS DISCLOSURE PURSUANT TO RULE 26(a)(2)**</u>

COME NOW the Defendants, **Columbia Aesthetic Plastic Surgery, LLC and**

**Eric Chang, M.D.,** by and through counsel, **Larry D. McAfee, Esquire and Gleason,**

**Flynn, Emig & Fogleman, Chartered,** and pursuant to Fed. R. Civ. P. 26(a)(2), identify

the following expert witnesses who are expected to testify on their behalf.  For retained

experts, Defendants provide reports, CV's, fee schedules and lists of prior testimony in

compliance with Fed. R. Civ. P. 26(a)(2)(B).

<u>**Retained Experts**</u>

    1.    Robert K. Sigal, M.D.
           1825 Samuel Morse Drive
           Reston, Virginia 20190

Dr. Sigal is a board-certified plastic surgeon at The Austin-Weston Center for

Cosmetic Surgery with expertise in performing breast surgery, including the type of

surgical procedure performed by Dr. Chang on Plaintiff Mary Clark on May 24, 2010.



DEFENDANT'S
EXHIBIT

3

tabbies®

(See Dr. Sigal's CV, Exh. 1A.)[1]

Dr. Sigal is expected to testify on issues of liability, causation, and damages. He is expected to state that, to a reasonable degree of medical certainty, Defendants Eric Chang, M.D. and Columbia Aesthetic Plastic Surgery, LLC, through its agents and employees (including but not limited to Dr. Chang), complied in all respects with the applicable standards of care in the treatment of Mary Clark; there were no breaches of the standard of care on the part of Defendants; and no alleged negligent acts and/or failures to act with regard to the medical care rendered to Mary Clark by Defendants were the proximate cause of the injuries and damages Ms. Clark claims in this case. Further, Dr. Sigal is expected to testify that on May 24, 2010, Dr. Chang performed a left breast capsulectomy, bilateral implant exchanges, bilateral fat transfers and bilateral axillary area liposuction on Ms. Clark. During the surgery, Ms. Clark sustained burns to her anterior chest from a lighted retractor, which had been placed on the surgical field. It is Dr. Sigal's opinion that it is not uncommon or unreasonable to place a lighted retractor on the surgical field because they typically do not get so hot as to burn the skin or cause injury. Upon recognition of the burn injury, Dr. Chang excised the burned tissue until healthy bleeding tissue was seen and the wounds were closed and dressed. Dr. Sigal is expected to further opine that Dr. Chang's care and treatment of Ms. Clark was reasonable and prudent, and within the standard of care. Moreover, it is anticipated that Dr. Sigal will opine that the care and treatment rendered by Dr. Chang to Ms. Clark was not a proximate cause of the injuries claimed by Plaintiff. Finally, it is expected that Dr. Sigal will testify regarding the nature and extent of Ms. Clark's burn injuries and the

---

[1] All exhibits referenced in this designation are attached and incorporated by reference.

2

subsequent medical care that was required for her condition. (See Dr. Sigal's Report, Exh. 1B, and Dr. Sigal's Certificate of Qualified Expert, adopted and incorporated by reference).

In the past four years Dr. Sigal has testified as an expert in one case in the Superior Court of the District of Columbia. Dr. Sigal charges $350.00 per hour for review of records and other materials; $900.00 per hour for deposition, with a two hour minimum; and $8,000.00 per day for trial. (See Dr. Sigal's Report, Exh. 1B).

    2.     Paul G. Ruff IV, M.D., F.A.C.S.
          2440 M Street, NW
          Suite 200
          Washington, D.C. 20037

Dr. Ruff is a board-certified plastic surgeon in private practice in Washington, D.C. with expertise in performing breast surgery, including the type of surgical procedure performed by Dr. Chang on Plaintiff Mary Clark on May 24, 2010. (See Dr. Ruff's CV, Exh. 2A.)

Dr. Ruff is expected to testify on issues of liability, causation, and damages. He is expected to state that, to a reasonable degree of medical certainty, Defendants Eric Chang, M.D. and Columbia Aesthetic Plastic Surgery, LLC, through its agents and employees (including but not limited to Dr. Chang), complied in all respects with the applicable standards of care in the treatment of Mary Clark; there were no breaches of the standard of care on the part of Defendants; and no alleged negligent acts and/or failures to act with regard to the medical care rendered to Mary Clark by Defendants were the proximate cause of the injuries and damages Ms. Clark claims in this case. Further, Dr. Ruff is expected to testify that on May 24, 2010, Dr. Chang performed a left breast capsulectomy, bilateral implant exchanges, bilateral fat transfers and bilateral axillary

3

area liposuction on Ms. Clark. During the surgery, Ms. Clark sustained burns to her anterior chest from a lighted retractor, which had been placed on the surgical field. It is Dr. Ruff's opinion that it is not uncommon or unreasonable to place a lighted retractor on the surgical field because they typically do not get so hot as to burn the skin or cause injury. Upon recognition of the burn injury, Dr. Chang excised the burned tissue until healthy bleeding tissue was seen and the wounds were closed and dressed. Dr. Ruff is expected to further opine that Dr. Chang's care and treatment of Ms. Clark was reasonable and prudent, and within the standard of care. Moreover, it is anticipated that Dr. Ruff will opine that the care and treatment rendered by Dr. Chang to Ms. Clark was not a proximate cause of the injuries claimed by Plaintiff. Finally, it is expected that Dr. Ruff will testify regarding the nature and extent of Ms. Clark's burn injuries and the subsequent medical care that was required for her condition. (See Dr. Ruff's Report, Exh. 2B).

In the past four years Dr. Ruff has testified as an expert in two cases, one in Pennsylvania and one in the District of Columbia. Dr. Ruff charges $250.00 per half hour for review of records and other materials; $1,500.00 per hour for deposition, with a two hour minimum; and $7,500.00 per half day for trial. (See Dr. Ruff's Report, Exh. 2B).

3.    Clyde Richard, Ph.D., P.E.
      Jesse M. Atwood, P.E.
      CED Technologies, Inc.
      2444 Holly Avenue
      Annapolis, MD 21401

Dr. Richard has a Master's Degree and Ph.D. in Mechanical Engineering and founded CED Technologies, Inc. in 1987. He has extensive expertise and experience in

performing forensic investigations on mechanical/electrical devices and testifying as an expert in this regard. (See Dr. Richard's CV, Exh. 3A). Mr. Atwood has a Bachelor's degree in Electrical Engineering and a Master's Degree in Engineering Management, and his areas of expertise include Electrical Engineering, Electrical Distribution Systems, Lighting and Lighting Systems, Nuclear Engineering, Electrical Generating Systems and Fire Origin and Cause. Mr. Atwood also has expertise and experience in performing forensic investigations on mechanical/electrical devices and testifying as an expert in this regard. (See Mr. Atwood's CV, Exh. 3B).

Dr. Richard and Mr. Atwood are expected to testify on the issue of causation. They will perform an independent evaluation and investigation of the retractor at issue, and it is anticipated that based upon the results of the evaluation and testing, and review of the discovery available in this case, that they will provide opinions to a reasonable degree of engineering certainty that no breaches of the standard of care on the part of Defendants Eric Chang, M.D. and Columbia Aesthetic Plastic Surgery, LLC, through its agents and employees (including but not limited to Dr. Chang), were the proximate cause of the injuries and damages Ms. Clark claims in this case. It is expected that these experts will testify regarding whether the retractor was in proper condition, and/or whether the retractor overheated, resulting in the capability to burn the patient's skin and cause injury. (See Dr. Richard and Mr. Atwood's Report, Exh. 3C).

In the past four years Mr. Atwood has not testified as an expert. (See Dr. Richard and Mr. Atwood's Report, Exh. 3C). A list of Dr. Richard's prior testimony is attached hereto. (See Exh. 3D).

Dr. Richard charges $360.00 per hour and Mr. Atwood charges $240.00 per hour

for review of records and other materials and testing; engineers' time is $155.00 to $360.00 per hour; research associate and technicians' time is $85.00 to $140.00 per hour; and graphic designers' time is $110.00 per hour.  (See Dr. Richard and Mr. Atwood's Report, Exh. 3C).

Respectfully submitted,

**GLEASON, FLYNN, EMIG & FOGLEMAN, CHARTERED**

By:  _/s/ Larry D. McAfee_
　　　Larry D. McAfee (Fed. Bar No.14519)
　　　lmcafee@gleason-law.com
　　　11 North Washington Street, Suite 400
　　　Rockville, Maryland 20850-4278
　　　301-294-2110
　　　Attorneys for Defendants Columbia Aesthetic Plastic
　　　Surgery, LLC and Eric Chang, M.D.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of September, 2013, a copy of the foregoing Defendants Columbia Aesthetic Plastic Surgery, LLC's and Eric Chang, M.D.'s Expert Witness Disclosure was electronically filed and served upon:

Kenneth Berman, Esquire
Berman, Sobin, Gross, Feldman & Darby, L.L.P.
481 N. Frederick Avenue, Third Floor
Gaithersburg, Maryland 20877
kbermanbsgfdlaw.com
*Attorney for Plaintiff*

Francis X. Leary, Esquire
Chason, Rosner, Leary & Marshall
401 Washington Street, Suite 1100
Towson, Maryland 21204
fleary@crlmlaw.com
*Attorney for Howard County General Hospital*

　　　　　　　　　　*/s/ Larry D. McAfee*
　　　　　　　　　Larry D. McAfee

EXHIBIT 1A

### Board Certified Cosmetic Surgeon Dr. Sigal - Credentials

**Robert K. Sigal, M.D. - Board Certified Cosmetic Surgeon**

**CURRENT POSITION:**

Medical Director: The Austin-Weston Center for Cosmetic Surgery

Hospital Affiliations:
Fairfax Hospital (Active)
Reston Hospital (Active)

**BOARD CERTIFICATION:**

American Board of Plastic Surgery



Robert K. Sigal, MD

**EDUCATION:**

Plastic Surgery Residency:
July 1, 1992 - June 30,1994
University of Pennsylvania
10 Penn Tower
34th and Civic Center Blvd
Phila., PA 19104

Internship and General Surgery Residency:
1985-87, 1989-92
Harbor/UCLA Medical Center
1000 W. Carson St.
Torrance, CA 90509

Post-Graduate: NIH research fellow, Univ. of Pennsylvania: 1987-89

Graduate: Jefferson Medical College: 1981-1985

Undergraduate: Harvard College: 1977-1981

**PUBLICATIONS:**

Sigal RK, Naama H, Altman H, Noone RB, and Daly JM. The immunology of silicone in a murine model. Surg. Forum. 44: 681-3. 1993.

Sigal RK, Shou J, and Daly JM. Parenteral arginine infusion in humans: Nutrient substrate or pharmacologic agent? JPEN 16(5): 423-428. 1992.

Sigal RK, and Daly JM. The use of enteral nutrition in the cancer patient. In Enteral and Tube Feeding. 2nd ed. Rombeau J (ed.) W.B. Saunders. Phila PA. 1990.

Sigal RK, Reynolds JV, Lieberman ML, Williams N, Ziegler MM, Daly JM. Tumor immunization: Improved results after recombinant gamma interferon modification. Arch. Surg. 125(3): 308-12. 1990.

Luketich J, Rigberg D, Banchs R, Shinkwin M, Sigal R, Daly J, Mullen J. Components of energy expenditure in tumor-bearing animals. J. Surg. Res. 48:573-8. 1990.

Reynolds JV, Daly JM, Shou J, Sigal RK, Ziegler MM, Naji A. Immunologic effects of arginine supplementation in tumor-bearing and non-tumor bearing hosts. Ann. of Surg. 211(2): 202-210. 1990.

Daly JM, Reynolds JV, Sigal RK, Shou J, Lieberman M. Effect of dietary protein and amino acids in immune function. Crit. Care Med. 18(2 supp): 86-93. 1990.

Lieberman MD, Shou J, Torres AS, Weintraub F, Goldfine J, Sigal RK, Daly JM. Effects of nutrient substrates on immune function. Nutrition. 6(1): 88-92. 1990.

Sigal RK, Lieberman MD, Reynolds JV, Shou J, Ziegler MM, Daly JM. Low dose interferon renders neuroblastoma more susceptible to interleukin-2 immunotherapy. J. Ped. Surg. 26(4): 389-95. 1991.

Lieberman MD, Sigal RK, Birch G, Shou J, Daly JM. Nutrient substrate potentiation of interleukin 2 (IL-2) immunotherapy. Surg. Forum. 1990.

Lieberman MD, Sigal RK, Perusia B, Daly JM. Natural killer cell stimulating factor (NKSF) augments natural killer cell (NK) and antibody dependent tumoricidal response (ADCC) in vitro against colon cancer. J. Surg. Res. 50(4): 410-5. 1991.

Sigal RK, Lieberman M, Reynolds JV, Shou J, Daly JM. Helper T-cell depletion augments cytotoxicity to neuroblastoma. Surg. Forum. 40:550-52. 1989.

Reynolds JV, Shou J, Choi H, Sigal RK, Ziegler MM, Daly JM. The influence of natural killer cells in neuroblastoma. Arch. Surg. 124(2): 235-39. 1989.

Lieberman MD, Shou J, Sigal RK, Yu J, Goldfine J, and Daly JM. Transfusion induced immunosuppression results in diminished host survival in a murine neuroblastoma model. J. Surg. Res. 48(5): 498-503. 1990.

Reynolds JV, Shou J, Sigal RK, Ziegler M, and Daly JM. The influence of protein malnutrition on T cell, natural killer cell, and lymphokine-activated killer cell funciton, and on biological responsiveness to high-dose interleukin-2. Cellular Immunol. 128(2): 569-77. 1990.

Shou J, Reynolds J, Sigal RK, and Daly JM. Growth hormone: Immune and metabolic effects in tumor-bearing mice. J. Surg. Res. 1989.

Daly JM, Lieberman MD, Shou J, Torres AS, Goldfine J, Smithgall J, Sigal RK. Metabolic and immune effects of postoperative feeding in the surgical patient. Surg. Gynec. & Obstet. 1989.

Daly JM, Reynolds JV, Sigal RK, Shou J, Lieberman ML. Effect of dietary protein and amino acids on immune function. Crit. Care Med. 18(2 Suppl):S86-93. 1990.

Reynolds JV, Evantash E, Sigal R, Daly J. Immunologic and endocrinologic effects of major abdominal operations. Br. J. Surg. 1989.

Reynolds JV, Shou J, Ziegler MM, Sigal RK, Evantash E, Daly JM. The influence of supplemental arginine on immune function and metabolism in steroid-treated rats. Surgery. 1989.

Sigal RK, Reynolds JV, Markmann JF, Shou J, Evantash E, Ziegler M, Naji A, Daly JM. Upregulation of MHC class I: Effect on growth and LAK sensitivity of neuroblastoma. Surgical Forum. 39: 572-75. 1988.

Reynolds JV, Sigal RK, Ziegler MM, Daly, JM. Immunomodulatory mechanisms of Arginine. Surgery. 104(2): 142-151. 1988.

Reynolds JV, Sigal RK, Margolis P, Ziegler M, Daly JM. Influence of protein restriction on natural killer cell activity. JPEN. 12(1). 13S. 1988.

Williams SK and Sigal RK. Preferential transport of non-enzymatically glucosylated ferritin across the kidney glomerulus. Kidney International. 28: 146-152. 1985.

Williams SK and Sigal RK. Increased permeability of the glomerular basement membrane to non-enzymatically glucosylated ferritin. Microvasc. Res. 27: 261. 1984.

**PRESENTATIONS... (without publication)**

**GRAND ROUNDS:**

Minimally invasive plastic surgery. Univ. of New Mexico, Albuquerque NM. June, 1993.

Silicone breast implants: The current controversy. Univ. of Pennsylvania, Philadelphia PA. May, 1993.

**SCIENTIFIC:**

Utsugi R, Sigal RK, and Whitaker LA. Using computer graphics technology as a consultation aid for patients who want a specific appearance. American Aesthetic Society. 1994.

Sigal RK, Naama H, Daly JM, and Noone RB. Silicone retards murine tumor growth. Plastic

Surgery Research Council. 1994.

    Sigal RK, Naama H, Daly JM, and Noone RB. Silicone increases murine macrophage cytotoxicity. American Association of Plastic Surgeons. 1994.

    Sigal RK, Naama H, Altman H, Daly JM, and Noone RB. Silicone increases murine macrophage cytotoxicity and retards tumor growth. Ivy Society. 1994.

    Sigal RK, Naama H, Altman H, Daly JM, Noone RB. The immunology of silicone in a murine model. Ivy Society. 1993.

    Sigal RK, Shou J, Goldfine J, Torres AS, Lieberman MD, Daly JM. Parenteral arginine infusion in man: Nutrient substrate or pharmalologic agent. ESPEN. 1990.

    Lieberman MD, Sigal RK, Evantash E, Daly JM. L-Arginine potentiates lymphokine-activated killer cell (LAK) cytotoxicity. FASEB. 1990.

    Daly JM, Evantash EE, Reynolds JR, and Sigal RK. Immune stimulation using arginine: correlation of in vivo and in vitro effects in man. Phila. Acad. of Surg. 1988.

    Sigal RK, Williams, RA, and Wilson SE. Patterns characterizing traumatic pancreatitis. American College of Surgeons (So. Cal.) 1987.

**AWARDS:**

**Post-Graduate:**

Basic Science Award (Plastic Surgery), Robert H. Ivy Society (1994)
Basic Science Award (Plastic Surgery), Robert H. Ivy Society (1993)
NIH Cancer and Nutrition Fellowship (1987-1989)

**Graduate:**

The Clinical Surgery Prize (1985)
Sigma Xi medical student research award (1984)

**Undergraduate:**

magna cum laude, senior honors thesis: Analysis of immunoglobulin heavy chain transcription products: Implication for transcriptional control.
lightweight crew: twice All-Ivy member of 1980 National Champion and Henley Eight

**MEMBERSHIPS AND ASSOCIATIONS: (year affiliated)**

    National Capital Society of Plastic Surgeons (Past President)
    Virginia Society of Plastic Surgery
    American Association for the Advancement of Science (1989)
    New York Academy of Sciences (1989)
    American College of Surgeons Candidates Group (1988)
    The United States Rowing Association (1982)
    Friends of Harvard Rowing (1982)
    The University Barge Club (1981)

**American Society of Plastic Surgeons 2004 PowerPoint Presentation** (251 MB)



EXHIBIT 1B



*The*
**AUSTIN-WESTON**
**CENTER**
*for*
**COSMETIC SURGERY**

George W. Weston, M.D.
Robert K. Sigal, M.D.
Byron D. Poindexter, M.D.

1825 Samuel Morse Drive
Reston, VA 20190
703/893-6168
FAX: 703/790-3444
1-800-385-1011
www.austin-weston.com
www.virginiabreast.com

September 25, 2013

Larry D. McAfee, Esq.
Gleason, Flynn, Emig & Fogleman, Chartered
11 North Washington Street, Suite 400
Rockville, MD 20850

    Re:   <u>Mary Clark v. Eric Chang, M.D.</u>

Dear Mr. McAfee,

    I have reviewed the above-referenced case and previously provided a Certified of Qualified Expert outlining my opinions and expert witness testimony. I am the Medical Director of The Austin-Weston Center for Cosmetic Surgery and my attached curriculum vitae describes my qualifications.

    In the past four years, I have testified as an expert witness once. That case involved a breast reduction complicated by tissue loss. The case went to trial in the Superior Court of the District of Columbia and was decided in favor of the defendant doctor for whom I testified.

    Compensation: For review of records and other materials related to the case, preparation of disclosure of expert opinion: $350.00 per hour.

    Testimony: $900.00 per hour for deposition, with a two hour minimum; $8,000.00 per day for trial.

    In connection with this case, I have reviewed:

1. Plaintiff's Amended Complaint
2. Medical records from Dr. Chang
3. Medical records from Scott Andochick, M.D.
4. Medical records from Frederick Memorial Hospital procedures dated 4/12/06, 5/06/06, 8/02/06, 10/19/06 and EKG & laboratory reports
5. Medical records from Howard County General Hospital procedures dated 5/16/07 and 5/24/10
6. Medical records from Northwest Hospital
7. Medical records from the Cardiology Center
8. Photographs of plaintiff's burn injury
9. Answers to Interrogatories from Plaintiff and the co-Defendant Howard County General Hospital



Member
AMERICAN SOCIETY OF
PLASTIC SURGEONS



Accredited by
Accreditation Association
for Ambulatory Health Care, Inc.

10.     Deposition transcripts of Dr. Chang; Linda Goodwin, R.N.; Toni Hobert; and Benedikta Vesnovky

I hold my opinions stated in this report to be within a reasonable degree of medical certainty.

## BACKGROUND

Ms. Clark, age 51, was a patient of Dr. Chang starting in 2006. Prior to the surgery at issue, Dr. Chang had performed five breast surgeries on Ms. Clark. Ms. Clark first saw Dr. Chang on March 31, 2006 for a consultation upon referral by Dawn Johnson Leonard, M.D. (Ms. Clark's general surgeon/breast surgeon). The history states that the patient was a 47-year-old woman who presented for a consultation regarding bilateral breast reconstruction. Her history was significant for a mastectomy on the right side in 2000, followed by chemotherapy. She had no evidence of any disease up until a recent mammogram in February, which showed some abnormalities. She had a needle biopsy on the left, which showed new breast cancer. She subsequently was seen by Dr. Leonard, who recommended a mastectomy. On April 12, 2006, she had a procedure by Dr. Chang at Frederick Memorial Hospital for delayed tissue expander placement on the right for breast reconstruction and immediate left breast tissue expander reconstruction. She saw Dr. Chang in follow-up on April 21, May 5, 2006, May 19 and June 2, 2006. On June 6, 2006 at Frederick Surgical Center, Dr. Chang performed (1) Removal of intact breast implant with drainage of seroma, (2) Paraprosthetic capsulectomy with repair of capsule and (3) replacement tissue expander. Ms. Clark saw Dr. Chang in follow-up on June 19, June 30 and July 14. On August 2, 2006, she had a procedure by Dr. Chang at Frederick Memorial Hospital for (1) Breast reconstruction with bilateral tissue expander removed and permanent implant placement; (2) Bilateral capsulectomy; and (3) Left breast alloderm placement. She saw Dr. Chang in follow-up on August 3, August 9, August 16 and September 21.

On October 19, 2006, Ms. Clark had another procedure by Dr. Chang at Frederick Memorial Hospital for (1) Revision of left reconstructed breast; (2) Left nipple reconstruction; and (3) Right nipple reconstruction. She saw Dr. Chang in follow-up on October 24. On May 16, 2007 at Howard County General Hospital, Dr. Chang performed the following procedures: (1) Left breast implant exchange; (2) Left breast capsulectomy; (3) Left breast Alloderm placement for contour defect; (4) Right breast implant repositioning; (5) Bilateral areolar tattooing. Ms. Clark had a follow-up with Dr. Chang on February 15, 2008, at which time he documented she felt well and was overall quite happy with the results. She was to return in one year.

With regard to the time period at issue in this case, Ms. Clark saw Dr. Chang on April 27, 2010 for follow-up, about three years from the bilateral breast reconstruction with implants. The notes indicate her left implant had some rippling at the upper pole with some contour deficits superiorly. She had some intermittent pain in the right chest, which had been worked out by cardiology and she was told that this was not heart related. It was noted to be intermittent pain that may be muscular in nature. There was no evidence of capsule contracture. She also had some rippling of the right upper pole near the incision line. The Impression was that she would do well with silicone implants rather than saline. As far as the contour deficits in the left upper pole step off area, Dr. Chang said he thought she would do well with some fat grafting to the area, and a capsulectomy to help bring her left implant up and medial a bit. A follow-up consultation note on May 10, 2010 states the patient presented for a second consultation regarding implant exchange. The risk of implant exchange, capsule contracture, asymmetry, implant malposition, need for implant removal, implant rupture all were explained to her. In addition, the fact that fat transfer can sometimes be unreliable and can lead to fat necrosis and firm nodules in the tissue was explained to her. She understood and nonetheless wished to proceed.

*The*
AUSTIN-WESTON
CENTER
*for*
COSMETIC SURGERY

1825 Samuel Morse Drive    Reston, VA 20190    703/893-6168    FAX: 703/790-3444
www.austin-weston.com • www.virginiabreast.com

On May 24, 2010 at Howard County General Hospital, Dr. Chang performed the surgery at issue in this case. The Operative Report states the procedures performed were (1) Left breast capsulectomy for implant repositioning; (2) Left breast implant exchange; (3) Right breast implant exchange; (4) Fat transfer from abdomen to left breast; (5) Fat transfer from abdomen to right breast; and (6) Lipo suction of bilateral axillary areas for contouring of the lateral breast area. The Complications noted were "Burn to chest from overheating of the lighted retractor." (Emphasis added.) The Findings were (1) Left implant malposition; and (2) No palpable abnormalities in either breast cavity. The Operative Report states that "she had a noticeable step off on the left upper pole of the breast. In addition, she was noted to have implant rippling in the bilateral breasts. Her left breast was noted to have a slight lateral and inferior displacement. . . ." In addition, the report further states:

> Procedure in detail:... her abdomen and chest were prepped and draped in the usual sterile fashion... upon using the lighted retractor to allow for visualization of the cavities, it was found that there had been burns from the retractor heating through the drape to the skin. Some of these burns were full-thickness in nature. The full-thickness burns were excised until healthy bleeding tissue was seen. Closure was performed in 2 layers with a 5.0 Monocryl for the deep dermis, followed by 5.0 plain gut for the skin. I felt that this would allow for better healing rather than allowing these deep burns to heal in on their own.

Dr. Chang testified that he formed an opinion at the time of the surgery that the lighted retractor malfunctioned and became hotter than it should have become, resulting in the burns at issue. During the surgery, Dr. Chang testified that he completed the removal of the left breast implant and had used the lighted retractor to modify the pocket. During this part of the procedure, the handle of the retractor did not feel abnormally hot. Dr. Chang was then called to address a malfunctioning centrifuge which he was using for the fat grafting portion of the procedure. According to his testimony, Dr. Chang placed the retractor on a towel so that the patient was protected from the light-emitting tip. After checking on the malfunctioning centrifuge for about five minutes, he returned to the patient, picked up the retractor and found heat emanating from the adaptor. The heat was moving its way down the handle, making both the handle and the adapter hot to the touch. These areas were not hot prior to placing the retractor down to check on the centrifuge. When he picked up the lighted retractor and found it hot, he asked for a new lighted retractor and a new cord to pair with it. He was given a new light handle and a new cord smaller in diameter. Those pieces of equipment used together did not result in any further problems during the remainder of the surgery. Dr. Chang testified that the smaller diameter cord paired to the light handle he had used did not cause heat. His impression was that because the original light handle got hot with the prior cord, that the two were inappropriately paired . This belief that an improper cord was paired with the handle was confirmed by conversations he had with nurses and technicians in the hospital.

Dr. Chang testified that he did not put anything about this pairing mismatch in his Operative Report because what he dictates in the an Operative Report concerns what occurs during surgery from a medical standpoint. He did not comment on the retractor since it pertained to an piece of engineering equipment, which is not his area of expertise and it was not relevant to his operative note. However, following the incident at issue, he was contacted by someone from engineering at the hospital. In addition, he went to the head nurse in the outpatient medical center, explained to her what happened with regard to the incident and was given updates informally later as to an investigation that was going on.

Moreover, during a follow-up office visit with Ms. Clark on January 20, 2012, Dr. Chang testified that his office records reflect that he disclosed information to the patient that he had regarding "the mismatch of the cord and the handle." He testified during his deposition that he disclosed to Ms. Clark both the information he had at the time of the operation when he realized the problem, and information he had

*The*
AUSTIN-WESTON
CENTER
*for*
COSMETIC SURGERY

1825 Samuel Morse Drive   Reston, VA 20190   703/893-6168   FAX: 703/790-3444
www.austin-weston.com • www.virginiabreast.com

from a meeting with the hospital that Dr. Chang testified is privileged information. Dr. Chang testified that he told Ms. Clark that he felt that an improper cord was used for the operation and because of that, the light handle got abnormally hot, which is what ultimately caused her burns. He further testified that this was based upon his impression in the operating room at the time of the surgery at issue.

Dr. Chang noted during his deposition that in normal use, the lighted retractor handle and adapter do not get hot, and he never has noticed the light handle getting hot anytime during his prior years of training or experience using this type of instrument. The lighted retractor is set up by the nurse and/or the tech in the operating room.

Linda Godwin, R.N., who was present in the operating room during the surgery performed by Dr. Chang on May 24, 2010, testified during her deposition that after the procedure relating to the left breast was completed, she turned off the light source to the retractor, and a surgical tech stated that the handle of the retractor was extremely warm, warmer than normal. The surgical tech then noticed there were burn marks on the patient's skin. Ms. Godwin asked if they wanted her to change the light cord, and Dr. Chang and the tech, Ms. Hobert, responded yes. She stated that there were two different diameter cords available for use with the retractor in the operating room. The first cord used was a cord that was wider in dimension. The second cord was more narrow than the first cord. After the cord was changed, no one indicated that the retractor got hot again during the remaining portion of the surgery. Ms. Godwin confirmed that Dr. Chang did not have any involvement in obtaining the supplies for the surgery, including the initial cord for the retractor. Ms. Godwin testified that it was her normal custom and procedure to put the light source at about 50 percent, and before Ms. Clark was burned she does not recall increasing it from 50.

Toni Hobert, a surgical tech who was present in the operating room during the surgery performed by Dr. Chang on May 24, 2010, confirmed during her deposition that she chose the retractor and the cord pre-operatively, and that she chose the larger diameter cord. She stated that she always chose the larger cord, so she knows she chose the larger cord in this case. She did not recall any express preference or request by Dr. Chang in this regard.

Benedikta Vesnovky, a surgical assistant who was present in the operating room during the surgery performed by Dr. Chang on May 24, 2010, also confirmed during her deposition that there was no problem with the retractor getting hot again after the cord was changed during the surgery.

According to Plaintiff's Answers to Interrogatories, she continued to see Dr. Chang following the May 24, 2010 surgery. She went to follow-up visits with her daughter, and Dr. Chang explained what took place during the surgery. He informed Plaintiff and her daughter "that the cord that was plugged into the instrument which burned me (the lighted retractor), was the incorrect cord and that was why the instrument heated up and burned through to my skin."

## SUMMARY OF OPINIONS

Ms. Clark had undergone a right-sided mastectomy in 2000 and sought treatment from Dr. Chang for bilateral breast reconstruction with tissue expanders beginning in April 2006. Ms. Clark subsequently underwent four additional surgeries related to the implants prior to the May 24, 2010 surgery by Dr. Chang. On May 24, 2010, Dr. Chang performed a left breast capsulectomy, bilateral implant exchanges, bilateral fat transfers and bilateral axillary area liposuction on Ms. Clark. During the surgery, Ms. Clark sustained burns to her anterior chest from a lighted retractor, which had been placed on the surgical field. It is my opinion that it is not uncommon or unreasonable to place the cord or handle of a lighted retractor on the surgical field because they typically do not get hot enough to burn the skin or cause injury.

*The*
AUSTIN-WESTON
CENTER
*for*
COSMETIC SURGERY

1825 Samuel Morse Drive    Reston, VA 20190    703/893-6168    FAX: 703/790-3444
www.austin-weston.com • www.virginiabreast.com

Leaving the retractor with its tip on a towel on the sterile field is common practice and was well within the standard of care.

Upon recognition of the burn injury, Dr. Chang excised the burned tissue until healthy bleeding tissue was seen and the wounds were closed and dressed. This is also appropriate care. It is therefore my opinion that Dr. Chang's care and treatment of Ms. Clark was reasonable and prudent, and within the standard of care.

Dr. Chang indicated in his Operative Report that the complication of the burn to the chest was due to "overheating of lighted retractor." Based upon my training and experience, a retractor should not, and does not, typically overheat when used under the circumstances presented.
The testimony of Dr. Chang and other providers present in the operating room during the surgery indicates that a larger diameter cord was being used at the time that the overheating was noted, which resulted in the burns. When the cord was changed to a smaller diameter cord, the retractor did not overheat, and the procedure was successfully completed. Dr. Chang testified that the smaller diameter cord paired to the light handle he had used did not cause heat. Dr. Chang testified that it was his impression that the handle of the retractor overheated due to the fact that it was paired with an inappropriate cord. Under the circumstances, based upon my training and experience, and the fact that the retractor functioned properly when a smaller cord was paired, to a reasonable degree of medical probability this appears to be the most likely cause of the problem with the retractor that resulted in the burns at issue. As Dr. Chang and the other providers testified, Dr. Chang had no involvement in obtaining and/or pairing the retractor with this cord, and he therefore has no liability for the malfunctioning instrument, and/or the resulting burns.

## CONCLUSIONS

Russell A. Williams, M.D., an expert witness engaged by Plaintiff, indicates that Dr. Chang breached the standard of care by placing the lighted retractor on Ms. Clark's chest intra-operatively, and that it is the standard of care to place the retractor in a holster during surgery.
I find that the facts in this case and my clinical experience lead me to disagree with his opinions. This particular surgery requires the retractor to be inserted and removed from the operative field many times during its course. It is reasonable and customary to keep the lighted retractor readily available within the sterile field by resting it on the patient as long as the tip is placed safely on a towel. I further conclude that any liability for the malfunctioning instrument utilized by Dr. Chang during the surgery at issue due to the retractor being paired with an inappropriate cord does not rest with Dr. Chang, as he had no involvement in obtaining and/or reviewing the supplies/instruments for surgery.

I hold these opinions to be within reasonable medical certainty.

Sincerely,

R. K. Sigal, MD

Robert K. Sigal, M.D.

*The* AUSTIN-WESTON CENTER *for* COSMETIC SURGERY

1825 Samuel Morse Drive    Reston, VA 20190    703/893-6168    FAX: 703/790-3444
www.austin-weston.com • www.virginiabreast.com

EXHIBIT 2A

2440 M ST. NW SUITE 200 • WASHINGTON, DC 20037
PHONE (202) 785-4187 • FAX (202) 785-1370 • E-MAIL DRRUFF@RUFFPLASTICSURGERY.COM

# PAUL G. RUFF IV, M.D., F.A.C.S.

## Ruff Plastic Surgery

### CERTIFICATION

Diplomate National Board of Medical Examiners, July 1994

Diplomate American Board of Surgery, February 2000

Diplomate American Board of Plastic Surgery, November 2003

### PRACTICE

Private Practice
July 2001-Present

### EDUCATION

Eastern Virginia Medical School
Norfolk, VA
M.D. May 1993

Georgetown University
Washington, D.C.
B.S. Biology May 1989

Gonzaga College High School
Washington, D.C.
May 1985

### POSTGRADUATE TRAINING

General Surgery

Washington Hospital Center
Washington, D.C.
July 1993-June 1996, July 1997-June 1999

Surgical Critical Care

Washington Hospital Center
Washington, D.C.
July 1996-June 1997

Plastic Surgery

University of California, San Diego Medical Center
San Diego, CA
July 1999-June 2001

### COURSES

The Curtis National Hand Center Microsurgical Training Program, June 1999

AO/ASIF Basic Maxillofacial Course, January 2000

Contour Threads/Threadlift, July 2005

Instructor: Facial Rejuvenation Through the Combined Use of Dermal Fillers and Injectables, ASPS Baltimore 2007

## ACTIVITIES

Medical School Class Vice-President 1990-1991, 1992-1993

Operation Smile 1991-1993

Intramural Sports 1989-1993; Football Champions 1991

High School Sports Physicals 1992-1993

Drug and Alcohol Awareness Teaching 1991-1993

Instructor Wound Management Course La Jolla, CA 1999-2001

Interface UCSD 1999-2003

Speaker/Trainer: Dermik Aesthetics for Sculptra, Facial Volume Restoration

Speaker/Trainer: Allergan Medical, Botox Cosmetic, Juvederm, Latisse

## AWARDS AND HONORS

Winner Washington, D.C. Chapter of the American College of Surgeons Section on Trauma Resident Paper Competition, 1996

Chief Administrative Resident, Washington Hospital Center Department of Surgery, 1998-1999

Edward Alva Gould Senior House Officer Award for Excellence Washington Hospital Center 1999

UCSD Department of Surgery Chairman's Prize, 2001

Washingtonian Magazine Top Doctors since 2005

Northern Virginia Top Doctors 2007

Consumers Check Book Top Doctors 2007

Best Doctors in America 2008-2010

Featured in New Beauty Magazine, 2007-2008

## ACCOMPLISHMENTS

Development and Implementation of Ventilator Weaning Critical Pathway

Co-investigator: Inhaled Nitric Oxide in the Treatment of Adult Respiratory Distress Syndrome

Sub-investigator: The Use of Diaspirin Cross-linked Hemoglobin for the Evidence of Reduction of Peri-operative Blood Transfusions

Sub-investigator: The Efficacy of Diaspirin Cross-linked Hemoglobin in the Treatment of Severe Hemorrhagic Shock

# BIBLIOGRAPHY

**Chapters**

Ruff IV PG. Mediastinitis. in Karamanoukian H, Soltoski P, Salerno T (Eds): Thoracic Surgery Secrets. Philadelphia, Hanley and Belfus, 2001, Chap. 44

Ruff IV PG. Chest Wall Reconstruction. In Karamanoukian H, Soltoski P, Salerno T (Eds): Thoracic Surgery Secrets. Philadelphia, Hanley and Belfus, 2001, Chap 48.

Ruff IV PG. Neuromuscular Blockers in Guttenberg, S (Eds): Cosmesis of the Face, Mouth and Jaws. John Wiley and Sons, 2011

**Manuscripts**

Deb S., Martin B., Sun L., Ruff P., DeBraux S., Austin B., Rich N.M., Rhee P. Lactated Ringer's resuscitation in hemorrhagic shock rats induces immediate apoptosis. J Trauma 1999, 46:582

Sun L., Ruff P., Austin B., Deb S., Martin B., Burris D., Rhee P., Early upregulation of ICAM-1 and VCAM-1 expression in rats with hemorrhagic shock and resuscitation. Shock 1999, 11:416

Rhee P., Wang D., Ruff P., Wolcott K., Debraux S., Austin B., Burris D., Sun L. Human neutrophil activation and increased adhesions by various resuscitation fluids. Critical Care Medicine 2000, 28:1;74

**Abstracts**

Rhee P., Wang D., Ruff P., Wolcott K., Debraux S., Austin B., Burris D., Sun L. Human neutrophil activation and increased adhesions by various resuscitation fluids. Critical Care Medicine 1998, 45:195

Deb S., Martin B., Sun L., Ruff P., DeBraux S., Austin B., Rich N.M., Rhee P. Lactated Ringer's resuscitation in hemorrhagic shock rats induces immediate apoptosis. J Trauma 1998, 45:195

Sun L., Ruff P., Austin B., Deb S., Martin B., Burris D., Rhee P., Early upregulation of adhesion molecules by Lactated Ringer's resuscitation in hemorrhaged rats. Shock 1998, 9:S1:53

**Presentations**

Primary closure versus colostomy and drainage for penetrating rectal trauma: A change in traditional management. Ruff P., Harviel J.D., Paul B.K., Buchly M., Golocovsky M., Finelli F.
Presented at Region III American College of Surgeons Committee on Trauma Resident Paper Competition.

Immediate upregulation of E-selectin and ICAM-1 is affected by resuscitation fluids after hemorrhagic shock. Rhee P., Sun L., Ruff P., DeBraux S., Austin B., Rich N.M.
Presented at the Society of University Surgeons, Resident Section, September 1997

Craniofacial distraction in the infant and neonate. Ruff P., Holmes R., Cohen S., Dobke M.
Presented at the California Society of Plastic Surgeons, May 2001

Posters

Rhee P., Wang D., Ruff P., DeBraux S., Austin B., Burris D., Sun L. Human neutrophil activation and increased adhesions by various resuscitation fluids. 27th Annual Educational and Scientific Symposium, Society of Critical Care, San Antonio, TX February 1998

Deb S., Martin B., Sun L., Ruff P., DeBraux S., Austin B., Rich N.M., Rhee P. Lactated Ringer's resuscitation in hemorrhagic shock rats induces immediate apoptosis. Uniformed Services University of the Health Sciences Research Day, Bethesda, MD, April 2, 1998

Sun L., Ruff P., Austin B., Deb S., Martin B., Burris D., Rhee P., Early upregulation of adhesion molecules by Lactated Ringer's resuscitation in hemorrhaged rats. Uniformed Services University of the Health Sciences Research Day, Bethesda, MD, April 2, 1998

Sun L., Ruff P., Austin B., Deb S., Martin B., Burris D., Rhee P., Early upregulation of adhesion molecules by Lactated Ringer's resuscitation in hemorrhaged rats. 21st Annual Conference on Shock, San Antonio, TX, June 1999

## PROFESSIONAL AFFILIATIONS

American College of Surgeons (Fellow)

American College of Surgeons, Washington, D.C. Chapter

American Society of Plastic Surgeons

American Society of Aesthetic Plastic Surgeons

American Medical Association

American Society for Lasers in Medicine and Surgery

Medical Society of the District of Columbia

National Capitol Society of Plastic Surgeons

The Wound Healing Society

UnderSea and Hyperbaric Medical Society

Osler Society of Washington, D.C.

## PRIVILEGES

Washington Hospital Center

MedStar Surgical Center

Sibley Memorial Hospital

Georgetown University Hospital

Suburban Hospital

**EXHIBIT 2B**

RUFF PLASTIC SURGERY

PAUL G. RUFF IV, M.D., F.A.C.S.

September 25, 2013

Larry D. McAfee, Esq.
Gleason, Flynn, Emig & Fogleman, Chartered
11 North Washington Street, Suite 400
Rockville, MD 20850

     Re:    <u>Mary Clark v. Eric Chang, M.D.</u>

Dear Mr. McAfee,

     I have agreed to review the case referenced above, and to provide expert witness testimony. In the past 4 years I have been retained as an expert witness in two cases. The first case involves a woman who was severely burned during a cosmetic laser procedure. I provided expert legal opinion for the plaintiff. The case was settled before depositions were required. The second case involves a plastic surgeon being sued for poor scars after a cosmetic procedure on her arms. This case has not progressed to depositions at this point as yet.

     Qualifications: Please see my curriculum vitae.

     Compensation: For review of records and other materials related to the case, preparation of disclosure of expert opinion: $250.00 per half hour.

     Testimony: $1,500.00 per hour for deposition, with a two hour minimum; and $7,500.00 per half day for trial.

     In connection with this case, I have reviewed:

1.     Plaintiff's Amended Complaint
2.     Medical records from Dr. Chang
3.     Medical records from Scott Andochick, M.D.
4.     Medical records from Frederick Memorial Hospital procedures dated 4/12/06, 5/06/06, 8/02/06, 10/19/06 and EKG & laboratory reports
5.     Medical records from Howard County General Hospital procedures dated 5/16/07 and 5/24/10
6.     Medical records from Northwest Hospital
7.     Medical records from the Cardiology Center
8.     Photographs of plaintiff's burn injury
9.     Answers to Interrogatories from Plaintiff and the co-Defendant Howard County General Hospital



RUFF PLASTIC SURGERY

PAUL G. RUFF IV, M.D., F.A.C.S.

10.    Deposition transcripts of Dr. Chang; Linda Goodwin, R.N.; Toni Hobert; and Benedikta Vesnovky

I hold my opinions stated in this report to be within a reasonable degree of medical certainty.

## BACKGROUND

Ms. Clark, a 51 year old female, became a patient of Dr. Chang in 2006. Prior to the surgery at issue, Dr. Chang had performed five reconstructive breast surgeries on Ms. Clark. She first saw Dr. Chang on March 31, 2006 in consultation regarding bilateral breast reconstruction upon referral by Dawn Johnson Leonard, M.D. (Ms. Clark's general surgeon/breast surgeon). Her history was significant for a mastectomy on the right side in 2000, followed by chemotherapy. She had no evidence of any disease up until a recent mammogram in February, which showed some abnormalities. Subsequently, a needle biopsy on the left revealed a new breast cancer. After evaluation by Dr. Leonard, a mastectomy was recommended. On April 12, 2006, Dr. Chang performed a delayed tissue expander placement on the right for breast reconstruction and immediate left breast tissue expander reconstruction at Frederick Memorial Hospital. She saw Dr. Chang in follow-up on April 21, May 5, 2006, May 19 and June 2, 2006. On June 6, 2006 at Frederick Surgical Center, Dr. Chang performed (1) Removal of intact breast implant with drainage of seroma, (2) Paraprosthetic capsulectomy with repair of capsule and (3) Replacement tissue expander. Ms. Clark saw Dr. Chang in follow-up on June 19, June 30 and July 14. On August 2, 2006, she had a procedure by Dr. Chang at Frederick Memorial Hospital for (1) Breast reconstruction with bilateral tissue expander removed and permanent implant placement; (2) Bilateral capsulectomy; and (3) Left breast alloderm placement. She saw Dr. Chang in follow-up on August 3, August 9, August 16 and September 21.

On October 19, 2006, Ms. Clark had another procedure by Dr. Chang at Frederick Memorial Hospital for (1) Revision of left reconstructed breast; (2) Left nipple reconstruction; and (3) Right nipple reconstruction. She saw Dr. Chang in follow-up on October 24. On May 16, 2007 at Howard County General Hospital, Dr. Chang performed the following procedures: (1) Left breast implant exchange; (2) Left breast capsulectomy; (3) Left breast Alloderm placement for contour defect; (4) Right breast implant repositioning; (5) Bilateral areolar tattooing. Ms. Clark had a follow-up with Dr. Chang on February 15, 2008, at which time he documented she felt well and was overall quite happy with the results. She was to return in one year.

With regard to the time period at issue in this case, Ms. Clark saw Dr. Chang on April 27, 2010 for follow-up, about three years from the bilateral breast reconstruction with implants. The notes indicate her left implant had some rippling at the upper pole with some contour deficits superiorly. She had intermittent pain in the right chest, which had been evaluated by cardiology and she was told that this was not heart related and may be muscular in nature. There was no evidence of capsular contracture. She also had rippling of the right upper pole near the incision line. The Impression was that she would do well with an exchange to silicone implants rather than saline. To improve the contour deficits in the left upper pole step off area, Dr. Chang

RUFF PLASTIC SURGERY

PAUL G. RUFF IV, M.D., F.A.C.S.

thought she would do well with regional structural fat grafting to the area, and a capsulectomy to help bring her left implant up and medial a bit. A follow-up consultation note on May 10, 2010 states the patient presented for a second consultation regarding implant exchange. The risk of implant exchange, capsule contracture, asymmetry, implant malposition, need for implant removal, implant rupture all were explained to her. In addition, the fact that fat transfer can sometimes be unreliable and can lead to fat necrosis and firm nodules in the tissue was explained to her. She understood and wished to proceed.

On May 24, 2010 at Howard County General Hospital, Dr. Chang performed the surgery at issue in this case. According to the Operative Report, the procedures performed were (1) Left breast capsulectomy for implant repositioning; (2) Left breast implant exchange; (3) Right breast implant exchange; (4) Fat transfer from abdomen to left breast; (5) Fat transfer from abdomen to right breast; and (6) Liposuction of bilateral axillary areas for contouring of the lateral breast area. The Complications noted were "Burn to chest from overheating of the lighted retractor." (Emphasis added.) The Findings were (1) Left implant malposition; and (2) No palpable abnormalities in either breast cavity. The Operative Report states that "she had a noticeable step off on the left upper pole of the breast. In addition, she was noted to have implant rippling in the bilateral breasts. Her left breast was noted to have a slight lateral and inferior displacement. . . ." In addition, the report further states:

> Procedure in detail:... her abdomen and chest were prepped and draped in the usual sterile fashion,.. upon using the lighted retractor to allow for visualization of the cavities, it was found that there had been burns from the retractor heating through the drape to the skin. Some of these burns were full-thickness in nature. The full-thickness burns were excised until healthy bleeding tissue was seen. Closure was performed in 2 layers with a 5.0 Monocryl for the deep dermis, followed by 5.0 plain gut for the skin. I felt that this would allow for better healing rather than allowing these deep burns to heal in on their own.

Dr. Chang testified that he formed an opinion at the time of the surgery that the lighted retractor malfunctioned and became hotter than it should have become, resulting in the burns at issue. During the surgery, Dr. Chang testified that he completed the removal of the left breast implant, but was advised that the centrifuge was not functioning properly, which was necessary for the fat grafting portion of the procedure. After checking on the malfunctioning centrifuge for about five minutes, he picked up the retractor and heat was emanating from the adaptor and moving its way down, whereby the handle and the adapter both were hot to the touch. These areas were not hot prior to placing the retractor down to check on the centrifuge. When he picked up the lighted retractor and it was hot, he asked for a new lighted retractor and a new cord to pair. He was given a new light handle and a new cord. Those pieces of equipment used together did not result in any further problems during the remainder of the surgery. The new cord was a smaller diameter cord. Dr. Chang testified that the smaller diameter cord paired to the light handle he had used did not cause heat. His impression was that because the light handle got hot with the



RUFF PLASTIC SURGERY

PAUL G. RUFF IV, M.D., F.A.C.S.

prior cord, that it was an inappropriate cord. This belief that an improper cord was paired with the handle was confirmed by conversations he had with nurses and technicians in the hospital.

Dr. Chang testified that he did not put anything in this regard in his Operative Report, because what he dictates in an Operative Report concerns what occurs during surgery from a medical standpoint. He did not comment on the retractor since it pertained to an engineering issue and piece of equipment, which is not his area of expertise and it was not relevant to his operative note. However, following the incident at issue, he was contacted by someone from engineering at the hospital. In addition, he went to the head nurse in the outpatient medical center, explained to her what happened with respect to the incident and was provided informal updates as to an investigation that was going on.

Moreover, during a follow-up office visit with Ms. Clark on January 20, 2012, Dr. Chang testified that his office records reflect that he disclosed information to the patient that he had regarding "the mismatch of the cord and the handle." He testified during his deposition that he disclosed to Ms. Clark both the information he had at the time of the operation when he realized the problem, and information he had from a meeting with the hospital that Dr. Chang testified is privileged information. Dr. Chang testified that he told Ms. Clark that he felt that an improper cord was used for the operation and because of that, the light handle became abnormally hot, which is what ultimately caused her burns. He further testified that this was based upon his impression in the operating room at the time of the surgery at issue.

Dr. Chang noted during his deposition that during normal use, the lighted retractor handle and adapter do not get hot, and he never has noticed the light handle getting hot anytime during his prior years of training or experience using this type of instrument. The lighted retractor is typically set up by the nurse and/or the tech in the operating room.

Linda Godwin, R.N., who was present in the operating room during the surgery performed by Dr. Chang on May 24, 2010, testified during her deposition that after the procedure relating to the left breast was completed, she turned off the light source to the retractor, and a surgical tech stated that the handle of the retractor was extremely warm, warmer than normal. The surgical tech then noticed there were burn marks on the patient's skin. Ms. Godwin asked if they wanted her to change the light cord, and Dr. Chang and the tech, Ms. Hobert, responded yes. She stated that there were two different diameter cords available for use with the retractor in the operating room. The first cord used was a cord that was wider in dimension. The second cord was more narrow than the first cord. After the cord was changed, no one indicated that the retractor got hot again during the remaining portion of the surgery. Ms. Godwin confirmed that Dr. Chang did not have any involvement in obtaining the supplies for the surgery, including the initial cord for the retractor. Ms. Godwin testified that it was her normal custom and procedure to put the light source at about 50 percent, and before Ms. Clark was burned she does not recall increasing it from 50 percent.

Toni Hobert, a surgical tech who was present in the operating room during the surgery performed by Dr. Chang on May 24, 2010, confirmed during her deposition that she chose the retractor and the cord pre-operatively, and that she chose the larger diameter cord. She stated that she always



RUFF PLASTIC SURGERY

PAUL G. RUFF IV, M.D., F.A.C.S.

chose the larger cord, so she knows she chose the larger cord in this case. She did not recall any express preference or request by Dr. Chang in this regard.

Benedikta Vesnovky, a surgical assistant who was present in the operating room during the surgery performed by Dr. Chang on May 24, 2010, also confirmed during her deposition that there was no problem with the retractor getting hot again after the cord was changed during the surgery.

According to Plaintiff's Answers to Interrogatories, she continued to see Dr. Chang following the May 24, 2010 surgery. She went to follow-up visits with her daughter, and Dr. Chang explained what took place during the surgery. He informed Plaintiff and her daughter "that the cord that was plugged into the instrument which burned me (the lighted retractor), was the incorrect cord and that was why the instrument heated up and burned through to my skin."

## SUMMARY OF OPINIONS

Ms. Clark had undergone a right-sided mastectomy in 2000 and sought treatment from Dr. Chang for bilateral breast reconstruction with tissue expanders beginning in April 2006. Ms. Clark subsequently underwent four additional surgeries related to the implants prior to the May 24, 2010 surgery by Dr. Chang. On May 24, 2010, Dr. Chang performed a left breast capsulectomy, bilateral implant exchanges, bilateral fat transfers and bilateral axillary area liposuction on Ms. Clark. During the surgery, Ms. Clark sustained burns to her anterior chest from a lighted retractor, which had been placed on the surgical field. It is my opinion that it is not uncommon or unreasonable to place a lighted retractor on the surgical field because they typically do not get so hot as to burn the skin or cause injury. Upon recognition of the burn injury, Dr. Chang excised the burned tissue until healthy bleeding tissue was seen and the wounds were closed and dressed. It is therefore my opinion that Dr. Chang's care and treatment of Ms. Clark was reasonable and prudent, and within the standard of care. Dr. Chang indicated in his Operative Report that the complication of the burn to the chest was due to "overheating of lighted retractor." Based upon my training and experience, a retractor should not, and does not, typically overheat when used under the circumstances presented.

The testimony of Dr. Chang and other providers present in the operating room during the surgery indicates that an incorrect, larger diameter cord was being used at the time that the overheating was noted, which resulted in the burns. When the cord was changed to a smaller diameter cord, the retractor did not overheat, and the procedure successfully was completed. Dr. Chang testified that the smaller diameter cord paired to the light handle he had used did not cause heat. Dr. Chang testified that it was his impression that the handle of the retractor overheated due to the fact that it was paired with an inappropriate cord. Under the circumstances, based upon my training and experience, and the fact that the retractor functioned properly when a smaller cord was paired to it, to a reasonable degree of medical probability this appears to be the most likely cause of the problem with the retractor that resulted in the burns at issue. As Dr. Chang and the other providers testified, Dr. Chang had no involvement in obtaining and/or pairing the retractor with this cord, and he therefore has no liability for the malfunctioning instrument, and/or the resulting burns.



**RUFF PLASTIC SURGERY**

PAUL G. RUFF IV, M.D., F.A.C.S.

## CONCLUSIONS

Dr. Russell A. Williams, M.D., an expert witness engaged by Plaintiff, indicates that Dr. Chang breached the standard of care by placing the lighted retractor on Ms. Clark's chest intra-operatively, and that it is the standard of care to place the retractor in a holster during surgery. I find that the facts in this case and my clinical experience do not support these conclusions and therefore disagree with his opinions.  I further conclude that any liability for the malfunctioning instrument utilized by Dr. Chang during the surgery at issue due to the retractor being paired with an inappropriate cord does not rest with Dr. Chang, as he had no involvement in obtaining and/or reviewing the supplies/instruments for surgery.

I hold these opinions to be within reasonable medical certainty.

Sincerely,

Paul G. Ruff IV, M.D., F.A.C.S.



**Technologies Incorporated**

EXHIBIT 3A

1.800.780.4221
www.cedtechnologies.com

# CURRICULUM VITAE
## CLYDE C. RICHARD, Ph.D., P.E.
### Mechanical Engineer

**Academic Background**
Ph.D., Mechanical Engineering, University of Connecticut, Storrs, Connecticut, 1971
M.S.M.E., Mechanical Engineering, Rensselaer Polytechnic Institute, Troy, New York, 1966
B.M.E., Mechanical Engineering, Rensselaer Polytechnic Institute, Troy, New York, 1963

**Registration**
Registered Professional Engineer, State of Maryland, License No. 13209
Registered Professional Engineer, State of Connecticut, License No. PEN.23676
Registered Professional Engineer, Commonwealth of Pennsylvania, License No. PE-048495-R
Registered Professional Engineer, Commonwealth of Virginia, License No. 0402 030825
Registered Professional Engineer, State of Florida, License No. PE-0053045
Registered Professional Engineer, State of New Jersey, License No. GE04629700
Registered Professional Engineer, State of Delaware, License No. 15620
Registered Professional Engineer, State of New York, License No. 086252

**Professional Work History**
*CEO/Mechanical Engineer*, CED Investigative Technologies Inc., Annapolis, Maryland, 1987-Present
*Professor*, U.S. Naval Academy, Annapolis, Maryland, 1976-1991
*Senior Mechanical Engineer*, Forensic Technologies International, Annapolis, Maryland, 1982-1986
*Consultant* , Department of Energy, Washington, D.C., 1976-1982
*Head, Development Dept.*, Babcock, Brown, Boveri Reaktor, Manheim, West Germany, 1973-1976
*Consultant to Managing Director*, Elsam-Kraftvaesgruppen, Kolding, Denmark, 1973
*Section Head*, Mechanical Engineering Department, Northeast Utilities Service Company,
    Berlin, Connecticut, 1971-1973
*Instructor of* Mechanical Engineering, University of Connecticut., Storrs, Connecticut, 1967-1971
*Consultant*, Mechanical Engineering Department, Northeast Utilities Service Company,
    Berlin, Connecticut, 1967-1971
*Senior Mechanical Engineer*, United Technologies Corporation, East Hartford, Conn., 1963-1967

**Professional Societies and Honors**
American Society of Mechanical Engineers          Human Factors Society
Society of Automotive Engineers                   Phi Kappa Phi
American Society of Safety Engineers              Patent Awards, 1967 and 1975

**Publications and Presentations**
Fifty-nine technical publications/presentations
Speaker at numerous technical meetings and symposiums in the U.S., Europe, and Israel

**Areas of Expertise**
Mechanical Engineering                   Mechanical Equipment Evaluations
Machine Analysis and Guarding            Analysis and Testing
Human Factors Analysis                   Accident Reconstruction

EXHIBIT 3B



1.800.780.4221
www.cedtechnologies.com

## CURRICULUM VITAE
## JESSE M. ATWOOD, P.E.
### Electrical/Nuclear Engineer

**Academic Background**

M.S., Engineering Management, Old Dominion University, 2008
B.S., Electrical Engineering, University of Texas at San Antonio, 2003

**Registration and Qualifications**

Naval Nuclear Propulsion Engineer
Registered Professional Engineer, State of Texas, License No. 105859

**Professional Work History**

Electrical Engineer, CED Investigative Technologies Inc., 2012-Present
Electrical Engineering Faculty, U.S. Naval Academy, 2011-Present
Senior Design Engineer, Luminant Power, 2008-2011
Engineering Watch Officer & Shift Maintenance Coordinator, U.S. Navy Submarine Service, 2006-2008
Main Propulsion Assistant/Electrical Assistant, U.S. Navy Submarine Service, 2003-2006

**Areas of Expertise**

Electrical Engineering
Electrical Distribution Systems
Lighting and Lighting Systems

Nuclear Engineering
Electrical Generating Systems
Fire Origin and Cause



CELEBRATES

## 25
*years*

OF SERVICE

EXHIBIT 3C

1.800.780.4221
www.cedtechnologies.com

September 24, 2013

Larry D. McAfee, Esq.
Gleason, Flynn, Emig & Fogleman, Chartered
11 North Washington Street, Suite 400
Rockville, Maryland 20850

Reference:     Mary Clark versus Eric Chang, M.D.
               CED Case No. 9926.1

Dear Mr. McAfee:

Recently, CED Technologies, Inc. was retained to perform an independent evaluation and investigation of the lighted fiber-optic retractor at issue in the above-referenced case.   CED engineers, Clyde C. Richard, Ph.D., P.E., and Jesse Atwood will be the responsible engineers working on this matter.  Dr. Richard has a Bachelor and Master Degree in Mechanical Engineering from Rensselaer Polytechnic Institute located in Troy, New York and a Ph.D. degree in Mechanical Engineering from the University of Connecticut located in Storrs, Connecticut.  Dr. Richard was a professor at the U.S. Naval Academy for 15 years.  In 1987 Dr. Richard founded CED Technologies, a company that regularly investigates and recreates various types of personal injury accidents.  Dr. Richard has extensive experience performing forensic investigations on mechanical/electrical devices and testifying as an expert in this regard.

Mr. Atwood has a Bachelor's degree in Electrical Engineering from the University of Texas located in San Antonio, Texas and a Master's Degree in Engineering Management from Old Dominion University located in Norfolk, Virginia.  Mr. Atwood's areas of expertise include Electrical Engineering, Electrical Distribution Systems, Lighting and Lighting Systems, Electrical Generating Systems and Fire Origin and Cause.  Mr. Atwood also has expertise and experience in performing forensic investigations on mechanical/electrical devices.

Dr. Richard's and Mr. Atwood's curriculum vitae are attached and describe in detail their backgrounds and qualifications.  Also attached is a listing of Dr. Richard's trial and depositions for the last four years.  In the past four years, Mr. Atwood has not testified as an expert witness.

CED Technologies charges $360.00 per hour for all activities that are performed by Dr. Richard and $240.00 per hour for all activities performed by Mr. Atwood.

In connection with this case, the following written materials have been reviewed:

1.  Deposition of Eric Chang, M.D. dated August 28, 2013;
2.  Deposition transcript of Toni Hobert dated August 26, 2013;

| New York / New England | Baltimore / Washington | Cleveland | Chicago | West Palm Beach | Jacksonville |
|---|---|---|---|---|---|
| 88 Trap Falls Road | 2444 Holly Avenue | 20033 Detroit Road | 125 Windsor Drive | 600 SE Central Parkway | 8817 Southpoint Parkway |
| Shelton, Connecticut 06484 | Annapolis, Maryland 21401 | North Ridge Annex, Suite 8 | Suite 115 | Stuart, Florida 34994 | Suite 1001 |
| 203.929.1339  tel. | 410.224.4235  tel. | Cleveland, Ohio 44116 | Oak Brook, IL 60523 | 954.992.6476  tel. | Jacksonville, Florida 32216 |
| 203.929.1534  fax | 410.841.6605  fax | 440.356.6195  tel. | 312.239.6659  tel. | 772.382.2355  fax | 904.281.7935  tel. |
|  |  | 440.356.6205  fax | 312.277.3733  fax |  | 904.281.7936  fax |

3. Deposition transcript of Linda Godwin, R.N. dated August 26, 2013;
4. Deposition transcript of Benedikta Vesnovsky dated August 26, 2013;
5. Plaintiff's Amended Complaint;
6. Answers to Interrogatories from Plaintiff and the co-Defendant Howard County General Hospital.
7. Various photographs of plaintiff's burn injury

The review of the written materials in this case furnished the following information concerning this matter:

1. Surgery was performed on Ms. Mary Clark by Dr. Eric Chang on May 24, 2010 at Howard County General Hospital;
2. The Operative Report states the procedures performed were (1) Left breast capsulectomy for implant repositioning; (2) Left breast implant exchange; (3) Right breast implant exchange; (4) Fat transfer from abdomen to left breast; (5) Fat transfer from abdomen to right breast; and (6) Lipo suction of bilateral axillary areas for contouring of the lateral breast area;
3. The Operative Report also states: "Burn to chest from overheating of the lighted retractor."
4. The Operative Report further states:
   Procedure in detail:... her abdomen and chest were prepped and draped in the usual sterile fashion... upon using the lighted retractor to allow for visualization of the cavities, it was found that there had been burns from the retractor heating through the drape to the skin. Some of these burns were full-thickness in nature. The full-thickness burns were excised until healthy bleeding tissue was seen. Closure was performed in 2 layers with a 5.0 Monocryl for the deep dermis, followed by 5.0 plain gut for the skin. I felt that this would allow for better healing rather than allowing these deep burns to heal in on their own;
5. Dr. Chang testified that he formed an opinion at the time of the surgery that the lighted retractor malfunctioned and became hotter than it should have become, resulting in the burns at issue;
6. During the surgery, Dr. Chang testified that he completed the removal of the left breast implant, but was advised that the centrifuge was not functioning properly, which was necessary for the fat grafting portion of the procedure. After checking on the malfunctioning centrifuge for about five minutes, he picked up the retractor and heat was emanating from the adaptor and moving its way down, whereby the handle and the adapter both were hot to the touch. These areas were not hot prior to placing the retractor down to check on the centrifuge. When he picked up the lighted retractor and it was hot, he asked for a new lighted retractor and a new cord to pair. He was given a new light handle and a new cord. Those pieces of equipment used together did not result in any further problems during the remainder of the surgery. The new cord was a smaller diameter cord. Dr. Chang testified that the smaller diameter cord paired to the light handle he had used did not cause heat. His impression was that because the light handle got hot with the prior cord, that it was an inappropriate cord. This belief that an improper cord was paired with the handle was confirmed by conversations he had with nurses and technicians in the hospital;
7. During a follow-up office visit with Ms. Clark on January 20, 2012, Dr. Chang testified that his office records reflect that he disclosed information to the patient that he had regarding "the mismatch of the cord and the handle."

8. Dr. Chang testified during his deposition that he disclosed to Ms. Clark both the information he had at the time of the operation when he realized the problem, and information he had from a meeting with the hospital that Dr. Chang testified is privileged information;

9. Dr. Chang testified that he told Ms. Clark that he felt that an improper cord was used for the operation and because of that, the light handle got abnormally hot, which he concluded was what ultimately caused her burns;

10. Dr. Chang further testified that his conclusion about the improper cord was based upon his impression in the operating room at the time of the surgery at issue;

11. Dr. Chang noted during his deposition that in normal use, the lighted retractor handle and adapter do not get hot, and he never has noticed the light handle getting hot anytime during his prior years of training or experience using this type of instrument;

12. Linda Godwin, R.N. was present in the operating room during the surgery performed by Dr. Chang on May 24, 2010;

13. Ms. Godwin testified during her deposition that after the procedure relating to the left breast was completed, she turned off the light source to the retractor, and a surgical tech stated that the handle of the retractor was extremely warm, warmer than normal. The surgical tech then noticed there were burn marks on the patient's skin;

14. Ms. Godwin reported that she asked if they wanted her to change the light cord, and Dr. Chang and the tech, Ms. Hobert, responded yes;

15. Ms. Godwin stated that there were two different diameter cords available for use with the retractor in the operating room. The first cord used was a cord that was wider in dimension. The second cord was more narrow than the first cord. After the cord was changed, no one indicated that the retractor got hot again during the remaining portion of the surgery;

16. Ms. Godwin confirmed that Dr. Chang did not have any involvement in obtaining the supplies for the surgery, including the initial cord for the retractor. Ms. Godwin testified that it was her normal custom and procedure to put the light source at about 50 percent, and before Ms. Clark was burned she does not recall increasing it from 50 percent;

17. Ms. Toni Hobert, was a surgical tech who was present in the operating room during the surgery performed by Dr. Chang on May 24, 2010;

18. Ms. Hobert confirmed during her deposition that she chose the retractor and the cord pre-operatively, and that she chose the larger diameter cord for the retractor in the operating room;

19. Ms. Benedikta Vesnovky, a surgical assistant, was also present in the operating room during the surgery performed by Dr. Chang on May 24, 2010;

20. Ms. Vesnovky confirmed during her deposition that there was no problem with the retractor getting hot again after the cord was changed during the surgery;

21. According to Plaintiff's Answers to Interrogatories, Ms. Clark continued to see Dr. Chang following the May 24, 2010 surgery. She went to follow-up visits with her daughter, and Dr. Chang explained what took place during the surgery.

22. Ms. Clark reported that Dr. Chang informed her and her daughter "…that the cord that was plugged into the instrument which burned me (the lighted retractor), was the incorrect cord and that was why the instrument heated up and burned through to my skin."

## DISCUSSION

Ms. Mary Clark was reportedly burned from the overheating of a lighted retractor during breast surgery. Dr. Chang who was performing the surgery reported that he had never experienced the overheating of a lighted retractor in the many years he has used this instrument during surgery. Dr. Chang theorized that an improper cord was the most probable cause of the overheating of the lighted retractor. Dr. Chang was not involved in obtaining any of the supplies, including the lighted retractor, which were used during the surgery.

Upon realizing that the lighted retracted had malfunctioned and overheated, Dr. Chang immediately obtained a new cord for the retractor which resulted in the proper operation of the instrument.

## ADDITIONAL WORK

The CED engineers involved in this case were not able to perform testing on the lighted retractor involved in this matter in order to determine the actual failure mechanism that resulted in this instrument overheating. If and when the lighted retractor can be made available to CED, testing can be conducted to determine why this instrument malfunctioned thereby causing Ms. Clark's burns.

## CONCLUSIONS

Based on the review of the available written materials in this case, CED engineers are able to state the following to a reasonable degree of engineering certainty:

1. Ms. Mary Clark was reportedly burned during her surgery from an overheated lighted retractor used during the surgery;
2. Dr. Eric Chang was the surgeon who was performing the surgery and had used a lighted retractor on hundreds of occasions without ever experiencing an overheating problem with this instrument;
3. Once Dr. Chang realized that the lighted retractor had malfunctioned and was over heating during the surgery, he immediately replaced the retractor with a retractor that operated properly;
4. There is no way that Dr. Chang made the lighted retractor malfunction;
5. There is no way that Dr. Chang can be made responsible for the burns suffered by Ms. Clark during her surgery.

Respectfully submitted,

Clyde Richard, Ph.D., P.E.

Jesse M. Atwood, P.E.

EXHIBIT 3D

## Trials and Depositions for Clyde C. Richard, Ph.D., P.E.
## 2009 - Present

| Date | Deposition/Trial CED Case No. | Title | Location | Docket No. |
|---|---|---|---|---|
| 2/24/09 | Deposition Case No. 51492.1 | McKinsey Piggee, Jr., and Earline Piggee v. Patterson Medical Products, Inc., d/b/a Sammons Preston, Inc.; Patterson Companies, Inc.; Patterson Medical Holdings, Inc.; Patterson Medical Holdings, Inc., d/b/a Sammons Preston, Inc. | In The United States District Court Eastern District of Arkansas Western Division | Case No. 4:07CV00605 |
| 3/10/09 | Deposition Case No. 7207.1 | Ramon Canaan v. Crown Equipment, et als. | Superior Court of New Jersey Law Division: Hudson County | Docket No.: HUD-L-5823-09 |
| 10/27/09 | Deposition Case No. 51578.1 | Zurich Insurance Company, as Subrogee of Atomic Ski USA, Inc., et al. v. Sunday River Skiway Corporation | United States District Court District of Maine | Civil Action No. 2:08-CV-00325 |
| 1/13/10 | Deposition Case No. 51353.1 | Timothy Rinaldi and Claudia Rinaldi v. Scag Power Equipment | United States District Court Southern District of New York | 08 CIV 0172 |
| 3/12/10 | Deposition CED Case No. 71650.1 | Petrona Alonzo Gaspar, Individually and as Personal Representative of the Estate of Decedent Pedro Tomas Juan, and on behalf of Survivors and Real Parties in Interest and as Guardian Ad Litem for Miguel Tomas Alonzo, a Minor; Jose Tomas Alonzo, Teresa Alonzo Pedro, Jorge Tomas Alonzo v. Finn Corporation, an Ohio Corporation, Advanced Mulch, Inc., a Florida Profit Corporation | In The Circuit Court of the Eleventh Judicial Circuit, in and for Dade County, Florida | General Jurisdiction Division Case No.: 08-44572 CA 13 |
| 3/22/10 | Deposition CED Case No. 71617.1 | Frank R. Infante and Barbara Gonzalez Infante v. Cobb Theatres III d/b/a Cobb Theatre Dolphin 19 | In The Circuit Court of the 11th Judicial Circuit In and For Miami-Dade County, Florida | Case No. 08-8522-CA-11 |
| 4/2/10 | Deposition CED Case No. 71637.1 | Julio Aguilera, as Personal Representative of the Estate of Gloria A. Aguilera, deceased v. Danny Blomme and CCC Group, Inc. | In the Circuit Court of the 10th Judicial Circuit in and for Polk County, Florida | Case No. 53-2008-CA004972 |
| 4/13/10 | Deposition CED Case No. 81059.1 | Teresa Carpenter v. Unisen, Inc. d/b/a Star Trac, a foreign corporation and Midwest Service & Installation, Inc. an Illinois corporation | In the Circuit Court of Cook County, Illinois County Department – Law Division | No. 06 L 13263 |
| 5/11/10 | Deposition CED Case No. 51185.1 | Cheryl D. Mead v. Sanofi-Aventis U.S., Inc., and Eric J. McNamara | State of Rhode Island Providence, S.C. Superior Court | C.A. No: PC-06 3975 |

CED Technologies, Inc.

## Trials and Depositions for Clyde C. Richard, Ph.D., P.E.
### 2009 – Present

| Date | Deposition / Trial CED Case No. | Title | Location | Docket No. |
|---|---|---|---|---|
| 5/18/10 | Trial CED Case No. 81067.1 | Christopher Greenstreet v. Emglo Products, LLC, et al. | Virginia: In the Circuit Court For the County of Chesterfield | Case No.: CL08-1687 |
| 5/20/10 | Trial CED Case No. 71617.1 | Frank R. Infante and Barbara Gonzalez Infante v. Cobb Theatres III, LLC d/b/a Cobb Theatre Dolphin 19 | In the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida | Case No.: 08-8522 CA 11 |
| 7/13/10 | Deposition CED Case No. 81055.1 | Donald J. Garrity and Colleen Garrity v. Gentronics | In the Circuit Court of Cook County, Illinois, County Department, Law Division | Case No. 04L7930 |
| 7/20/10 | Deposition CED Case No. 71632.1 | Christopher J. Leavitt v. Air Liquide Healthcare America Corp., et al. | In the Circuit Court of the Eighth Judicial Circuit, in and for Alachua County, Florida | Case No. 01-08-CA-1781 Division J |
| 9/1/10 | Deposition CED Case No. 71714.1 | Juliet Cooper v. RaceTrac Petroleum, Inc., et al. | In the Circuit Court of the Ninth Judicial Circuit in and for Orange County, Florida | Case No. 04-CA-9158 |
| 10/12/10 | Deposition CED Case No. 81075.1 | Lita Ford v. Lin Vinicky; Kellie Plunkett, Curves for Women Fee Vee Inc., Higher Ground Management Inc., Curves International Inc., Ecological Services International, Inc. | In the Circuit Court of Cook County, Illinois County Department – Law Division | Case No. 05 L 10716 |
| 11/30/10 | Trial CED Case No. 51211.1 | Natalie M. Barnhard v. Cybex International, Inc. v. Amherst Orthopedic Physical Therapy, P.C. and Peter J. Schaus | State of New York Supreme Court: County of Erie | Index No. 2005 – 2368 |
| 12/8/10 | Deposition CED Case No. 71339.1 | Carmen Medina, personal representative of the Estate of Hugo Medina, deceased, and surviving wife of Hugo Medina v. Seabard Marine Ltd., Inc. and Miami-Dade County | In the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida | Case No. 07-11608 CA 31 |
| 12/14/10 | Deposition CED Case No. 51584.1 | Cveta Golceva, as Administratrix of Estate of Dordi Golcev and Cveta Golceva, wife of Dordi Golcev, Dimo Golcev and Stanka Meskova v. Zilmet, Watts Industries, Inc. (a/k/a Watts Water Technologies), The Home Depot, Inc., ABC Management Corp. (1-5); GHI Distributing Corp. (1-5); JKL Maintenance Corp. (1-5) and John Doe (1-5) | Superior Court of New Jersey Law Division: Passaic County | Docket No. PAS-L-3846-08 |
| 1/11/11 | Deposition CED Case No. 91184.1 | Charles Mitter v. Lumber & Things, Inc., d/b/a Lumber & Things, Lumber & Things Industries, Inc. and Lance Jeffrey Combs | In the United States District Court for the Northern District of West Virginia | Civil Action No. 3:09-cv-00049 |

CED Technologies, Inc.

## Trials and Depositions for Clyde C. Richard, Ph.D., P.E.
### 2009 - Present

| Date | Deposition/Trial CED Case No. | Title | Location | Docket No. |
|------|-------------------------------|-------|----------|------------|
| 1/20/12 | Deposition CED Case No. 71986.1 | Chase Peysen v. Alliance PJRT Limited Partnership f/k/a Alliance RT Limited Partnership, d/b/a Cranes Landing Apartments; Alliance PJRT GP, Inc., f/k/a Alliance RT GP, Inc., and Alliance Residential Management LLC, and Pool Solutions and Supply, Inc. | In the Circuit Court of the Ninth Judicial Circuit of the State of Florida, in and for Orange County, Civil Division | Case No.: 08-CA-20662 |
| 3/29/12 | Deposition CED Case No. 71954.1 | Tonya Douglas as Personal Representative of the Estate of A. J. Smith, for benefit of Tonya Douglas, Aubrey Smith and the Estate of A. J. Smith v. Indian River Associates II, LLLP; and G.L. Homes of Florida Corporation | In the Circuit Court for the 19th Judicial Circuit in and for Indian River County, Florida | Case No.: 312010-CA-010989 |
| 4/24/12 | Deposition CED Case No 73021.1 | Rory Sweeney, et ux., v. Pride Mobility Products Corporation, et al. | In the Circuit Court for Montgomery County Civil Division | Case No.: 348119-V |
| 4/26/12 | Deposition CED Case No. 51485.1 | Brian Cohn and Karen Cohn, Co-Administrators of the Estate of Zachary Cohn, Brian Cohn Individually, and Karen Cohn Individually v. Hayward Industries, Inc., d/b/a Hayward Pool Products, Inc., A.O. Smith Corp., and Town of Greenwich | Superior Court Judicial District of Stamford / Norwalk at Stamford | Docket No.: FST-X05-CV-08-5006304-S |
| 5/15/12 | Deposition CED Case No. 81062.1 | Myra A. Griffin v. Yakima Valley Sundome, Central Washington State Fair Association, and Washington Interscholastic Activities Association | In the Superior Court of the State of Washington in and for Yakima County | No. 06-2-00563-6 |
| 5/16/12 | Deposition CED Case No. 81176.1 | Duane F. Hill v. Vanderwerff Construction Co., an Illinois Corporation, Brite-O-Matic Manufacturing, Inc., a Foreign Corporation, and Brite-O-Matic Corporation, an Illinois Corporation | In the Circuit Court of Cook County, Illinois, County Department, Law Division | No. 07 L 010319 |
| 6/18/12 | Deposition CED Case No. 77144.1 | Carolyn Randall v. Kenneth S. Nugent, P.C., Kenneth S. Nugent, and John T. Ruff | In the State Court of DeKalb County, State of Georgia | Civil Action File No. 11-A-37363-7 |
| 6/22/12 | Deposition CED Case No. 71926.1 | Lisa Williams, as Personal Representative of the Estate of Robert Williams, Deceased v. PCS Phosphate Company, Inc., et al. | United States District Court Middle District of Florida Jacksonville Division | Case No.: 3:10-cv-549-J-32JRK |
| 6/29/12 | Trial CED Case No. 81062.1 | Myra A. Griffin v. Yakima Valley Sundome, Central Washington State Fair Association, and Washington Interscholastic Activities Association | In the Superior Court of the State of Washington in and for Yakima County | No. 06-2-00563-6 |

CED Technologies Inc.

## Trials and Depositions for Clyde C. Richard, Ph.D., P.E.
### 2009 - Present

| Date | Deposition/Trial CED Case No. | Title | Location | Docket No. |
|---|---|---|---|---|
| 9/23/12 | Deposition CED Case No. 72093.1 | Linda Carlos Baillie as P.R. of the Estate of Douglas Joseph Carlos v. HMA Santa Rosa Medical Center, LLC | In the Circuit Court of the First Judicial Circuit in and for Santa Rosa County, Florida | No. 2010 44-CA-010 N-B |
| 2/7/13 | Deposition CED Case No. 72284.1 | Stephen Simpson v. C. Calvin Warriner, III | In the Circuit Court of the 15th Judicial Circuit, In and For Palm Beach County, Florida | No. 50-2012-CA-009991-XXXX-MB-AA |
| 4/24/13 | Deposition CED Case No. 9024.1 | Raymond Green v. MAT Holdings, Inc. and Midwest Air Technologies, Inc. | In the Circuit Court for the City of Hampton, Virginia | Case # CL10-1891 |
| 8/16/13 | Deposition CED Case No. 72046.1 | Joyann Levitt and Robert C. Fuss, as Trustee of Lawrence Levitt, her husband v. Stolz Companies, Inc. | In the Circuit Court of the Fifteenth Judicial Circuit in and For Palm Beach County, Florida | Case No.: 502011CA10211 XXXXMB AB |

CED Technologies, Inc.

# EXHIBIT
# 4

**GFE** **GLEASON FLYNN**
**EMIG & FOGLEMAN, CHARTERED**

ATTORNEYS AT LAW

Larry D. McAfee
*Member*
Admitted MD • DC
lmcafee@gleason-law.com

October 8, 2013

Kenneth Berman, Esquire
Berkman, Sobin, Gross, Feldman & Darby, L.L.P.
481 North Frederick Avenue
Gaithersburg, MD 20877

　　　　Re:　**Mary Clark v. Eric Chang, M.D., et al.**

Dear Ken:

　　　　Please provide dates for the deposition of Plaintiff in the above-referenced case. In addition, I have not received any response to my prior request for supplementation of Plaintiff's Rule 26(a)(2) Disclosures. As I noted in my prior correspondence, Plaintiff's Rule 26(a)(2) Disclosures do not comply with the Federal Rules of Civil Procedure's specific requirements for disclosure of expert testimony during the discovery period, and Plaintiff's failure to provide the requisite information in her Rule 26(a)(2) Disclosures makes it impossible for me to properly and sufficiently prepare to depose these witnesses. As you know, the discovery deadline is quickly approaching on November 12, 2013. If I do not receive a Rule 26(a)(2) Disclosures in compliance with the Federal Rules of Civil Procedure with sufficient time to depose Plaintiff's experts prior to the close of discovery, I will have no alternative but to file a Motion to Strike Plaintiff's experts.

　　　　　　　　　　　Sincerely,

　　　　　　　　　　　Larry D. McAfee

LDM/KSK/mp
cc: Francis X. Leary, Esquire

**DEFENDANT'S
EXHIBIT
4**

11 NORTH WASHINGTON STREET
SUITE 400
ROCKVILLE, MARYLAND 20850-4278

TELEPHONE: 301.294.2110
FACSIMILE: 301.294.0737
WWW.GLEASONFLYNNEMIGFOGLEMAN.COM

# EXHIBIT
# 5

Gaithersburg Office:

Alan B. Gross *
Clifford B. Sobin *
Kenneth M. Berman *
David Galinis * †
Michael H. Feldman *
Richard A. Teitel
Lauren E. Pisano * ‡
Craig I. Meyers * *
Kevin M. Ringel *
Pernell A. Choren

Of Counsel:
Phyllis J. Dobin *

# BERMAN | SOBIN | GROSS
# FELDMAN & DARBY LLP

Gaithersburg Office:
481 North Frederick Avenue, 3rd Floor
Gaithersburg, MD 20877
301.670.7030
Fax 301.670.9492
www.bsgfdlaw.com

Towson Office:

P. Matthew Darby ~
Patrick M. Wysong * °
Ari N. Laric
Jason Shultz *
Craig B. Heron

* Also Admitted in DC
· Also Admitted in MA
‡ Also Admitted in NJ
~ Also Admitted in PA
† Also Admitted in VA
° Also Admitted in WV

October 15, 2013

Larry McAfee, Esq.
Gleason, Flynn, Emig & Fogleman, Chtd.
11 N. Washington Street, Suite 400
Rockville, MD 20850-4278

RE: *Clark v. Chang, M.D., et al.*

Dear Mr. McAfee:

We are in receipt of your letter of October 8, 2013. We named several experts in our Designation of Expert Witnesses. Would you care to give us the courtesy of an indication as to how you believe the designation does not comply with Federal Rule 26(a)(2)?

I would like to take the discovery deposition of Dr. Siegel as well as your other experts and would appreciate it if you would provide me dates as to their availability.

Thank you.

Very truly yours,

Kenneth M. Berman

KMB/cnb

**DEFENDANT'S EXHIBIT**

**5**

# EXHIBIT

# 6

**GFE** GLEASON FLYNN           ATTORNEYS AT LAW
**GFE** EMIG & FOGLEMAN, CHARTERED

Larry D. McAfee
*Member*
Admitted MD • DC
lmcafee@gleason-law.com

October 18, 2013

Kenneth Berman, Esquire
Berkman, Sobin, Gross, Feldman & Darby, L.L.P.
481 North Frederick Avenue
Gaithersburg, MD 20877

    Re:    <u>Mary Clark v. Eric Chang, M.D., *et al.*</u>

Dear Ken:

    I would like to proceed to schedule the deposition of Dr. Leonard, who was designated in Plaintiff's Rule 26(a)(2) Disclosures, since she is a treating physician. Please provide dates as soon as possible. As to your letter dated October 15, it is not my responsibility to educate you regarding how to comply with the rules of the Court as to Plaintiff's expert disclosures. However, I believe my October 8 letter provides the necessary information in this regard. With regard to your request to depose Defendants' experts, I will provide dates for these depositions after you have complied with the rules, and I have had an opportunity to depose your experts.

    Sincerely,

    *Larry D McAfee*

    Larry D. McAfee

LDM/KSK/mp
cc: Francis X. Leary, Esquire

**DEFENDANT'S EXHIBIT**
6

11 NORTH WASHINGTON STREET
SUITE 400
ROCKVILLE, MARYLAND 20850-4278

**GFE**

TELEPHONE: 301.294.2110
FACSIMILE: 301.294.0737
WWW.GLEASONFLYNNEMIGFOGLEMAN.COM