**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **MARY CLARK**, | : | |
| | : | |
| Plaintiff | : | Case NO. 13-CV-0184 ELH |
| | : | Judge Ellen Lipton Hollander |
| v. | : | |
| | : | |
| **HOWARD COUNTY GENERAL,** | : | |
| **HOSPITAL,** *et al*, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EXPERT, RUSSEL WILLIAMS, M.D., AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S REQUEST FOR HEARING**

COMES NOW the Plaintiff, Mary Clark, by and through counsel, Kenneth M. Berman, Esq., Kevin M. Ringel, Esq., and Berman, Sobin, Gross, Feldman & Darby, LLP, and, pursuant to Federal Rule of Civil Procedure 56, files this Motion in Opposition and Request for Hearing, and as grounds thereto states:

**I.     Introduction**

The case at bar arises from injuries sustained by Plaintiff Mary Clark on May 24, 2010 when she underwent breast reconstruction surgery performed by Defendant Eric Chang, M.D. at Howard County General Hospital.  Ms. Clark sustained severe burns to her chest from an overheated lighted retractor, which was placed on the Plaintiff's chest during a surgical procedure.  Suit was brought against Howard County General Hospital, Columbia Aesthetic Plastic Surgery, LLC, and Dr. Chang. The claim against Howard County General Hospital was settled on November 19, 2013.

It is not in dispute that Ms. Clark's burns were caused when the overheated lighted retractor was laid on Ms. Clark's chest during the surgery.  Ms. Clark initially filed a claim in the Health Care Alternative Dispute Resolution Office of Maryland before properly removing the action to this honorable court on January 17, 2013. [Docket No. 1].  The Plaintiff then filed an Amended Complaint on February 4, 2013. [Docket No. 7].  On April 17, 2014, Defendants Columbia Aesthetic Plastic Surgery, L.L.C. and Dr. Chang filed a Motion to Strike Plaintiff's Expert Russell Williams, M.D., and for Summary Judgment.  The Court should deny Defendants' motion as 1) Dr. Williams has sufficient knowledge to aid the trier of fact in resolving the material issues in the instant action as he is a board certified general surgeon with overlapping expertise in the specific plastic surgery issues involved in the present case, 2) Dr. Williams' opinions are based upon sufficient facts and data based upon his extensive review of the relevant medical records as well as his many years of experience, education, and practice as a surgeon, and 3) because there are genuine disputes of material fact as to the actual precautions, if any, Dr. Chang took to prevent the burns and what part of the instrument actually caused the burns.

**II.      Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a party seeking summary judgment must show that "there is no genuine dispute as to any material fact and that the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56.  A material fact is one that "might affect the outcome of the suit under the governing law." Gionfriddo v. Jason Zink, LLC, 769 F. Supp. 2d 880, 889 (D. Md. 2011).  A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

When considering a motion for summary judgment, "[c]ourts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008).

**III.    Contrary to Defendants' Contentions, Dr. Williams Has Sufficient Knowledge to Aid the Trier of Fact In Resolving the Material Issues in the Instant Action Inasmuch as he is Not Only a Board Certified General Surgeon With Overlapping Expertise Regarding the Specific Issues of This Case, But he has Written, Taught, and Lectured in the Area of Burns in an Operating Room**

Dr. Williams has been a licensed surgeon for nearly forty (40) years. Dr. Williams is board certified in both general surgery and in vascular surgery.  Over the course of his career, Dr. Williams has taught on the field of surgery, given lectures on surgery and operating room safety, and written books and articles on surgery and operating room safety.  (Dr. Williams Depo. Tr., attached hereto as Exhibit 1, at 36:17-25; 37:1-10).  Specifically, Dr. Williams has written several articles on operating room hazards, including, but not limited to, fires and burns.  (Id. at 48:20-25; 49:1-25).  Furthermore, Dr. Williams has served as a guest lecturer, at the request of the American College of Surgeons, on the topic of hazards in the operating room, including burns to patients such as the Plaintiff experienced in the case at bar.  (Id. at 50:1-8; 51:8-20).  As such, Dr. Williams possesses the requisite training, experience, and knowledge to render an opinion in this case.

The Defendants correctly state the law in that both the applicable standard of care and the substantive sufficiency of an expert's opinion must be assessed under Maryland law, as opposed to federal law.  See Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982); Creekmore v. Maryview Hosp., 662 F.3d 686, 690 (4th Cir.

2011).  However, the Defendants incorrectly contend that the Plaintiff has failed to produce sufficient testimony from a qualified expert to establish the standard of care for a physician practicing in Maryland.  (Defendant Memo. at 9).

The Defendants contend that because Dr. Williams is not a plastic surgeon, has never performed the exact type of surgery at issue, and has not used the exact lighted retractor, he is not qualified to establish the standard of care.  (Defendants' Memo. at 10).  It has been irrefutably established, however, that "it is not necessary for a certifying or testifying expert witness in a medical malpractice case to be the same kind of health care provider as the defendant."  Nance v. Gordon, 210 Md. App. 26, 32 (2013).  Rather, an expert, such as Dr. Williams, need only be certified "in the same *or a related specialty as the defendant*."  Cts. & Jud. Proc. § 3-2A-02(c)(2)(ii)1B (emphasis added).

The Court of Special Appeals, in DeMuth v. Strong, 295 Md. App. 521 (2012), first considered the meaning of "related specialty."  In DeMuth, the defendant, an orthopedic surgeon, performed a total knee replacement on the plaintiff.  Id. at 526.  Following the procedure, the plaintiff developed blood flow issues to the left foot, which ultimately required amputation of the left leg above the knee.  Id. at 529.  At trial, the plaintiff called a vascular surgeon to testify that the orthopedic surgeon breached the standard of care by failing to evaluate the blood flow to the plaintiff's left foot following the procedure.  Id. at 530-32.  The issue in DeMuth was whether or not the specialties of orthopedic surgery and vascular surgery overlapped, so as to be "related" and, further, whether a vascular surgeon could testify as to the standard of care regarding a surgical procedure performed by an orthopedic surgeon.  See id.  The Court of Special Appeals determined that the word "related,"  as

4

considered in the context of the statute, has its ordinary plain dictionary meaning of "associated" or "connected."   Id. at 535-36.   The Court of Special Appeals also established that whether or not the specialties were "related" was not a black and white issue, but rather must be evaluated on a case-by-case basis:

> We conclude, however, that **in the context of the malpractice allegations in this case**, the specialties of orthopedic surgery and vascular surgery overlap, so that the board certification specialties are 'related' within the meaning of CJP section 3-2A-020(c)(2)(ii)1B

Id. at 545 (emphasis added).

In holding that the board certification specialties of orthopedic surgery and vascular surgery were "related," so as to allow a vascular surgeon to testify as to the standard of care in a procedure performed by an orthopedic surgeon, the Court of Special Appeals stated, in relevant part:

> In other words, Dr. Johanning did not give and was **not being asked to give standard of care testimony about the performance of the knee replacement surgery itself**.   Rather, his opinions focused solely on the postoperative care and treatment of patients who have undergone that surgery.

Id. at 545 (emphasis added).

Similarly here, Dr. Williams has not been asked to opine as to the aspects of the particular technical method used in performing the breast reconstruction but, rather, the standard of care as it relates to the overall use of general surgical tools and instruments, specifically lighted retractors, and safety in the operating room.  Because the central standard of care issue in this case is whether or not it was negligent to place an active lighted retractor, regardless of the particular model or particular operative procedure, directly on a patient's body, there is a clear "overlap" between

the specialties of general surgery/vascular surgery and plastic surgery.  Defendants
seem to want the Court to believe that Dr. Williams testified as to the standard of care
of the actual breast reconstruction surgery.  That is simply not the scenario that this
Court is asked to consider.  In fact, Dr. Williams testified at his deposition that he was
not taking issue with the actual procedure, just the safety aspects of placing a lighted
retractor on a patient's body during an operation, e.g., safety in the operating room:

> Q.      But when you use -- just so I'm clear, when you
> use the term "improper surgical techniques," you're not
> talking about the actual --
> A.      Cut and tie.
> Q.      Yes, cut, manipulate, retract, expand, whatever?
> A.      No, I'm sure that was perfect.

(Exhibit 1 at 81:9-15).

As discussed above, the plaintiff in DeMuth offered the testimony of a board
certified *vascular* surgeon as to the standard of care applicable to a board certified
*orthopedic* surgeon.  295 Md. App. at 534.  Nonetheless, the Court of Special
Appeals ultimately found that the two fields sufficiently "overlapped" and "for
purposes of that standard of care issue, vascular surgery and orthopedic surgery were
related specialt[ies] under the board certification requirement…."  Id. at 546.  The
Court of Special Appeals noted that both surgeons received training in how to
examine a patient postoperatively to determine complications.  Likewise here, Dr.
Williams is opining as to how a surgeon handles a lighted retractor, regardless of the
particular operative procedure.

Indeed, the situation in DeMuth is far more attenuated than the instant action.
Dr. Williams is board certified in general surgery and vascular surgery.  Further, Dr.
Williams is not testifying as to any specific *plastic surgery procedure,* but rather as to

6

the standard of care concerning operating room burns during surgical procedures generally.  The proper placement and use of a lighted retractor during a surgical procedure applies consistently to general/vascular surgeons, plastic/reconstructive surgeon, and many other types of surgeons.  There is sufficient overlap between Dr. Williams, a board certified surgeon, and Defendant Chang, a board certified plastic surgeon.  Moreover, Dr. Williams testified at his deposition that general surgeons also perform some plastic surgery procedures:

> Q.      Right.  Okay. Go Ahead.
> A.      And the defendant's, the healthcare provider's specialty, relates to plastic surgery that we general surgeons do, so if you're --oh, you cleared the air about capsulotomies and all that stuff.  It's highly specialized stuff.
> Q.      What plastic surgery do general surgeons do?
> A.       Oh, the stuff that plastic surgeons can't be bothered doing, skin grafts to patients that can't pay.

(Exhibit 1 at 86:8-16).

The issue of whether medical specialties are "related" was again addressed recently in Hinebaugh v. Garrett Co. Mem. Hosp., 207 Md. App. 1 (2012).   In Hinebaugh, the Court of Special Appeals, applying the test set forth in DeMuth, considered whether a dentist that was board certified in oral and maxillofacial surgery ("OMS") was in the same or a related specialty as a radiologist or family medicine practitioner.  Id.  The Court of Special Appeals found that the two specialties were not related.  Id. at 28.  In doing so, the Court discussed the holding in DeMuth:

> We concluded that, within that overlap area of treatment, the specialties were 'related.' They would not be related with respect to the performance of surgeries within the specialties. Ordinarily, vascular surgeons do not perform orthopedic surgeries, and therefore vascular surgery is not a related specialty, for purposes of the board certification requirement, **when**

7

> **the standard of care issue in a medical malpractice case is whether an orthopedic surgeon properly performed a particular orthopedic surgery**, such as the knee replacement operation the plaintiff underwent in *DeMuth*. Likewise, orthopedic surgeons ordinarily do not perform vascular surgeries, and therefore orthopedic surgery is not a related specialty for purposes of the board certification requirement **when the standard of care issue is whether a vascular surgeon properly performed a particular vascular surgery operation or procedure.** When, as in *DeMuth*, however, the treatment rendered is performed by both specialists and therefore **is within the overlapping expertise of two board specialty areas, so that both board certified specialists should be equally knowledgeable and competent to testify about the prevailing standard of care for a health care provider board certified in either specialty**, the specialties are "related" and opinions about the standard of care may be given by either board certified specialist.

Id. at 23 (emphasis added).

In the instant matter, there is overlap between the two board certified specialties as the issue is not whether Defendant Chang breached the standard of care in how he performed the actual breast reconstruction procedure, but whether the standard was breached when Defendant Chang improperly used a surgical instrument, e.g., placed the lighted retractor on the Plaintiff's body during the surgical procedure. Both Dr. Williams and Defendant Chang perform surgical procedures that require the use of lighted retractors. They both are in situations that require that such instruments be placed down and retrieved several times throughout the procedure. While Dr. Williams has not used the exact lighted retractor that Dr. Chang used in the instant procedure, Dr. Williams has used other, similar lighted retractors over the course of his practice. (Exhibit 1 at 39:8-9). Dr. Williams' expert opinion is that it is a breach of the standard of care for a surgeon, plastic or otherwise, to place a lighted retractor,

of any model, directly on the body of a patient during a surgical procedure, any
surgical procedure.

The Court of Special Appeals, in <u>Hinebaugh</u>, also reaffirmed the rule that the
statute "does not require that the applicable standards of practice be established by an
expert witness in the same health care profession as the defendant." 207 Md. App. at
21. Nor does the statute require that the "testifying expert must be a member of the
same health care profession as the defendant." <u>Id</u>.

Additionally, the history and intent behind the addition of subsection (c)(2) to
Courts and Judicial Proceedings §3-2A-02, in 2004, was discussed in <u>Demuth</u>. 205
Md. App. at 539-42. The Court of Special Appeals analyzed the intent of the
legislature and the purpose of the Act when it added certain professional
qualifications that an expert witness must have in order to testify as to a defendant's
breach of the standard of care:

> As the history of the Act makes plain, **the tort reform
> objective never has been to eliminate or limit
> liability in meritorious medical malpractice cases**.
> Rather, the objective has been to cull out non-
> meritorious cases early in the litigation process so as to
> reduce the cost of defense, which contributes to the
> high cost of malpractice insurance, and to prevent
> significant verdict awards in cases that are not
> medically meritorious but engender great sympathy,
> which also contribute to the high cost of malpractice
> insurance. Thus, in assessing the meaning of the
> statutory subparagraphs at issue, **our interpretation
> must not be so broad as to result in the consequence,
> clearly not intended by the legislature, of placing
> roadblocks to recovery in meritorious medical
> malpractice cases**

<u>Id</u>. at 541-42 (emphasis added).

The Defendants' argument, that Dr. Williams lacks sufficient specialized knowledge to aid the jury, notwithstanding that he is one of the leading experts, nationwide, in operating room safety, in particular surgical burns in the operating room, would, in effect, place this exact type of roadblock, contemplated and rejected above.  The defendant in <u>DeMuth</u> argued for a similarly narrow construction of the word "related," which the Court of Special Appeals flatly rejected:

> The purpose of the Act, to cull out non-meritorious medical malpractice cases, **would not be advanced by the very narrow construction of the word 'related' proposed by Dr. DeMuth**: that board certification specialties cannot be 'related' if they are regulated by different boards, require different training regiments, or concern different aspects of human anatomy or physiology.  As Mr. Strong points out, those are all necessary characteristics of distinct health care specialties, **but they do not foreclose the conclusion that specialties, or field of health care, may be related**.  We agree with Mr. Strong that De. DeMuth's interpretation of the word 'related' in subparagraph 1B would effectively eliminate that word from the statute

<u>Id</u>. at 544 (emphasis added).

There is no dispute as to the fact that the Plaintiff sustained burns to her chest as a result of the lighted retractor being placed on her body during the May 24, 2010 surgery.   The Defendants also do not dispute that the burn was the result of negligence; rather, they simply argue that the negligence was not on account of their actions.  It is clear from the undisputed facts that the Plaintiff has a meritorious claim and to adopt the narrow interpretation forwarded by the Defendants would contradict the legislative intent behind <u>Cts. & Jud. Proc. § 3-2A-02(c)(2)(ii)1B</u>.

IV.     **The Opinion of Dr. Williams is Based Upon Sufficient Facts and Data Because He Reviewed All Relevant Documents and Records Necessary to Form His Opinion as Well as Relying Upon His Extensive Experience and Knowledge in This Area**

The Defendants contend that because Dr. Williams did not review the engineering report of the expert retained by the Defendant hospital, his opinion is not based upon sufficient facts or data.  (Defendant's Memo. at 12-13).  In forming his opinion, Dr. Williams reviewed the medical records of Dr. Chang and Howard County General Hospital, photographs of the burns, the instruction manual of the actual instrument used, the depositions of Dr. Chang and the three nurses involved, the reports of other experts retained in this matter and his training, knowledge, education, and experience.  The only item that the Dr. Williams did not review was the Johns Hopkins investigation report, which was completed by an expert retained by the Defendant hospital and which Johns Hopkins refused to produce during the early stages of litigation, claiming "peer review" privilege.  As a result, Dr. Williams was not able to review said report.  It, therefore, borders on the absurd for Defendants to attempt to strike Dr. Williams on the basis that he did not review a document that co-Defendants refused to produce and claimed as privileged and which was prepared by one of the Defendants themselves, subsequent to the incident in question.

Furthermore, it is not "undisputed" that the handle of the lighted retractor caused the burns to the Plaintiff's chest.  As will be discussed in greater detail below, there are inconsistencies and varying opinions among the Defendants' own experts as to what part of the instrument actually caused the burns.

The fact that the hospital report found that the handle of the retractor overheated because it was attached to an incorrect cord is irrelevant for purposes of

Dr. Williams' testimony and ultimate opinion: that, regardless of what part of the instrument caused the physical burn, it is a breach of the standard of care to place a lighted retractor directly on top of a patient's body during a surgical procedure. The information contained in the Defendant hospital's investigatory report, which says that the retractor was overheated, does not impact or render Dr. Williams' testimony unreliable because it does not change or alter his opinion.

The Defendants also take issue with Dr. Williams' opinion that the standard of care requires that a lighted retractor be stored in a proper holster or on a metal table. Specifically, the Defendants argue that no such specific holster exists for the lighted retractor and, therefore, his statement is premised on mistaken assumptions of fact. (Defendants' Memo. at 14). Leaving aside that such a dispute, assuming arguendo, that it is true, goes only to the weight and not the admissibility of Dr. Williams' opinion. Dr. Williams testified that "holster" is simply a general term used when discussing the storing of a lighted retractor. (Exhibit 1 at 42:9-18). Dr. Williams further stated that the standard of care requires that any such holster must be constructed and utilized off of and away from the patient's person. (Exhibit 1 at 77:8-16; 78:1-2). It was not done in this instance and that is what constituted the breach, regardless of the specific holster employed.

In sum, contrary to the Defendants' arguments, Dr. Williams' testimony is not based on mistaken assumptions of fact nor is it unreliable. Dr. Williams has reviewed all relevant and pertinent material that has been made available to him. As discussed above, Dr. Williams' expert opinion, regardless of which part of the instrument actually caused the burns, is that the instrument should not have been placed on the Plaintiff's body and left there during the procedure.

12

**V.     There is a Genuine Dispute of Material Fact as to Whether or Not Defendant Chang Placed a Towel or Even Drapes Over the Plaintiff's Body During the Surgical Procedure and as to What Part of the Instrument Actually Caused the Burn to the Plaintiff's Chest, Therefore, Summary Judgment is Not Appropriate**

The Defendants contend that there is no material dispute of fact, even viewing the facts in a light most favorable to the Plaintiff, as to any aspect of the case. (Defendant's Memo. at 1).  This contention is simply not true given the facts and records of this case.  Indeed, there are several genuine disputes as to material facts. First, it is unclear which part of the lighted retractor actually caused the burns to the Plaintiff's body.  Second, it is disputed as to whether or not Dr. Chang placed towels, or even drapes, in between the Plaintiff's person and the lighted retractor when he placed the instrument on the Plaintiff's chest during the procedure.

Dr. Chang testified at his deposition that he believed it was the handle that had become hot and caused the burns during the surgical procedure.  (Dr. Chang Depo. Tr., attached hereto as Exhibit 2, at 47:3-13).  This conclusion, however, is disputed not only by the deposition of Dr. Chang and Dr. Williams' but also, interestingly enough, by Defendants' own expert witnesses.   First, the medical records and photographs demonstrate that the Plaintiff sustained multiple burns during the procedure.  If the handle was the cause of the burns, as Dr. Chang contends, then Dr. Chang would have had to have noticed that the handle was hot after the first burn, as he picked up and placed down the lighted retractor several times throughout the procedure.  Dr. Chang acknowledged the constant use of the lighted retractor when questioned during his deposition:

> Q.     Okay.  How long had you used it on Ms. Clark?
> And -- and -- actually -- yeah, let me ask that.  And if

> you have used it several times and put it down, let me know that as well, to be fair.
>
> A.      During this portion of the procedure, **you pick up the lighted retractor; you put it down; you pick it up; you put it down**.

(Exhibit 2 at 47:18-22; 48:1-3) (emphasis added).

Dr. Ruff, the Defendants' expert witness, also discussed Dr. Chang's use of the lighted retractor throughout the procedure:

> Q.      Okay.   Do you know how many times, specifically with Dr. Chang's procedure, he would have had to use the retractor over the course of the procedure?
>
> A.      He would have used it fairly continuously when he was dissecting the pocket or performing the capsulectomy or making any little bit of capsule pocket adjustments.   So it would be, for periods of the case, continuous in/out, in/out
>
> Q.      So "continuous" being it's always in his hand?
>
> A.      Either in his hand or in his hand, down, back in his hand, a second later, down, depending on what they were operating on

(Dr. Ruff Depo. Tr., attached hereto as Exhibit 3, at 55:19-22; 56:1-10).

Additionally, Dr. Ruff opined that he believed that the handle had become hot, causing the burns, but then states that Dr. Chang would not have been able to operate with an overheated handle:

> Q.      Do you have an opinion as to which part of the retractor became hot during this procedure?
>
> A.      **They state the handle became hot, which would be very unusual**.
>
> Q.      Why do you say that?
>
> A.      Well, **there's no way a handle can be hot and have a surgeon continue to operate effectively**.   That would be incompatible with the utility of the device as well as the comfort of the surgeon.

(Exhibit 3 at 53:18-22; 54:1-2) (emphasis added).   The fact that there are multiple burns demonstrates that Dr. Chang did continue to operate with the lighted retractor,

14

even after it overheated.  The facts lead to one of two conclusions, either that it was not the handle that caused the burns or that Dr. Chang continued to operate knowing that the handle had become dangerously hot, resulting in multiple burns to the Plaintiff's chest.

Added to all of the uncertainty, the Defendants' engineering expert, Dr. Clyde Richard, testified at his deposition that it was the cord of the instrument that caused the Plaintiff's burns and not the handle.  Specifically, Dr. Richard testified that he "believed[d] it was the cord, it wasn't the retractor itself."  (Dr. Richard Depo. Tr., attached hereto as Exhibit 4, at 40:10-11).  Thus, there is a genuine dispute as to which part of the lighted retractor caused the burns and, further, whether Dr. Chang continued to operate despite knowledge of the overheated instrument.

There is also a genuine dispute of fact as to whether or not Dr. Chang properly protected the Plaintiff and the surgical field during the procedure.  Dr. Chang testified during his deposition that he "probably" draped the Plaintiff on the date of the procedure.  Dr. Chang was asked to describe how he drapes his patients:

> Q.      Okay.  Did you drape Ms. Clark that day?
> A.      **Probably.**
> Q.      And you say 'probably' because you don't recollect specifically?
> A.      Correct.
> **…**
>
> Q.      Okay.  Tell me how you drape the patient.
> A.      I take towels and I towel off the surgical field. After the towels, I place a paper drape over the surgical towels.   Sometimes I staple those towels in place; sometimes I do not.
> Q.      Literally onto the towel itself?
> A.      Excuse me?
> Q.      The paper is literally on top of the towel itself?
> A.      Correct.

(Exhibit 2 at 32:7-12; 33:20-22; 34:1-8) (emphasis added).  Dr. Chang then further

described what precautions he takes when he is going to place a lighted retractor

directly onto a patient during a procedure:

> Q.   Where did you pick it up from?
> A.   During an operation if I'm using a lighted
> retractor, I either place a lighted retractor on a Mayo
> stand or I hand it to the surgical assistant.  **If I place it
> on a surgical drape, I place a folded towel
> underneath the lighted retractor to protect the
> patient from the lighted retractor**, specifically the tip
> of the lighted retractor which is where the light comes
> from.
> Q.   And is that what occurred on this day?
> A.   Yes.
> Q.   Okay.   The reason that you put the lighted
> retractor on the towel on top of the drape I assume is
> because of the risk of the retractor causing a burn?
> A.   The risk is of the light itself in concentrated
> form causing the drape to catch fire.  That is the risk of
> the light coming out of the tip of the retractor causing
> the drape to catch fire.  **Like I said, when I --
> performed the surgery, I placed the -- placed the
> lighted retractor on a folded towel** with care to
> separate the tip of the retractor from the patient and
> from the drape

(Exhibit 2 at 38:12-22; 39:1-15) (emphasis added).  Dr. Chang went on to testify that

he specifically recalls that the drapes and towels were not burned following the

completion of the procedure.  (Exhibit 2 at 35:3-6).

The Defendants' expert, Dr. Ruff, is of the opinion that it is not a breach of

the standard care of care to place a lighted retractor directly onto a patient's body if

the instrument is "padded properly."  (Exhibit 3 at 65:4-12).  Dr. Ruff described the

term "padded properly" as placing a towel on a patient's body in such a manner that

the "…towels are usually folded so that there's a few layers, and the lighted retractor

is generally set so that the tip is nowhere near the patient, off, and not in contact with

anything else." (Exhibit 3 at 67:18-22; 68:5-9).  Therefore, according to Dr. Ruff, proper padding requires that the lighted retractor be placed on top of an additional folded towel and not come into contact with the patient's body.

Dr. Ruff then, however, went on to state that he is of the opinion that the burns to the Plaintiff did not occur through the drapes but, rather, through direct contact with Ms. Clark's skin.  This statement is significant because: (1) it directly contradicts Dr. Chang's contention that he properly draped and protected the patient's person when placing the instrument onto her chest and (2) it implies that Dr. Chang breached the standard of care as stated by his own expert doctor.  The following exchange, which took place during Dr. Ruff's deposition, is particularly probative:

> Q.      And your understanding is that the actual burn occurred through the drapes.  Right?
> A.      I actually don't know how the -- I can't tell you exactly how the burns occurred.  **If they had occurred through the drapes, you would have burn marks on the drapes**.  And according -- **and you would have smelled it**.  I don't know if you've ever smelled burning drapes, but they smell horrible, it's not a subtle smell.  So I can't -- **I would not believe that they would have occurred through the drape** because you would -- somebody in the OR would have noticed that smell, the anesthesia tech, nurse, surgeon --
> Q.      **So the only other way for the burns to occur would have been through direct contact with the skin. Correct?**
> A.      **That would probably have been the only other way.**

(Exhibit 3 at 90:6-22; 91:1) (emphasis added).

Dr. Ruff believes that, had the lighted retractor burned through the drapes, somebody in the operating room would have noticed the smell or observed burn marks.  <u>See</u> <u>id</u>.  Because there were no burn marks or smells reported, Dr. Ruff can only conclude that the burn resulted from direct contact with the Plaintiff's skin.  <u>See</u>

17

id.  As indicated above, Dr. Ruff's opinion is that placing a lighted retractor onto a patient's body is safe only if padded properly.  Id. at 65:4-12.  However, in this case, Dr. Ruff's own deposition testimony establishes that the instrument came into direct contact with the Plaintiff's skin and was not, therefore, properly padded.  Dr. Ruff's testimony, as highlighted above, at the very minimum establishes that there is a genuine dispute as to a material fact concerning whether or not Dr. Chang took proper precautions prior to placing the lighted retractor onto the Plaintiff's chest and, further, whether Dr. Chang placed the instrument directly on the Plaintiff's skin.

Furthermore, Dr. Richard, the Defendants' engineering expert, also testified during his deposition that there must have been direct contact between the cord and the skin:

> Q.      Okay.  Is it your understanding that the lighted retractor caused the burns through direct skin contact?
> A.      **The cord, yes.**
> Q.      The cord.  So there was direct contact between the cord and the skin?
> A.      **There would have to be, yes.**

(Exhibit 4 at 42:21-22; 43:1-6) (emphasis added).   Dr. Richard's testimony is consistent with that of Dr. Ruff and affirms the fact that there must have been direct contact between the lighted retractor and the Plaintiff's chest, in violation of the standard of care opined by the Defendants' own expert witness, Dr. Ruff.

Dr. Williams' expert opinion is that a lighted retractor should never be placed directly on a patient during a procedure in order to prevent exactly what occurred in this case.  The instruction manual of the actual lighted retractor used indicates, in no uncertain terms, that the instrument is not to be placed on or near a patient or surgical drape.  The instructions do not provide any caveats or exceptions concerning the use

18

of towels or drapes as protection for the patient.  The actual language, in relevant part, is stated as follows:

> **Never** leave an illuminated light cable with or without an endoscope connected **on or near a patient or surgical drape**: the **risk of patient burns** and igniting flammable material **can result.**

(Instruction Manual, attached hereto as Exhibit 5) (emphasis added).

### VI.    Conclusion

Dr. Williams has sufficient knowledge to aid the trier of fact in resolving the material issues in this case.  As a board certified general surgeon who has written, taught, and lectured in the area of operating room burns, Dr. Williams has sufficient overlapping expertise and is knowledgeable and competent to testify about the prevailing standard of care at issue in this case.  Dr. Williams' opinion is also based upon sufficient facts and data.  Furthermore, there is a genuine dispute of material fact and, therefore, summary judgment would be inappropriate.

WHEREFORE, the Plaintiff, Mary Clark, respectfully requests that this Honorable Court deny Defendants' Motion to Strike and for Summary Judgment and in the event one is necessary, order a hearing on the parties' motions.

Respectfully submitted,

BERMAN, SOBIN, GROSS,
FELDMAN & DARBY, LLP

_____/s/_____
Kevin M. Ringel, Esq.
Federal Bar No. 18503
481 N. Frederick Ave., Suite 300
Gaithersburg, MD  20877
Phone: (301) 670-7030
kringel@bsgfdlaw.com
Attorney for Claimant

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that on this 4th day of May, 2014, a copy of the foregoing Plaintiff's Opposition to Defendants' Motion to Strike Plaintiff's Expert, Russell Williams, M.D., and For Summary Judgment and Plaintiff's Request for Hearing was electronically filed and served upon:

Larry D. McAfee, Esq.
Gleason, Flynn, Emig & Fogleman, Chtd.
11 N. Washington Street, Suite 400
Rockville, MD 20850-4278
Attorney for Columbia Aesthetic Plastic Surgery, LLC and Eric Chang, M.D.

BERMAN, SOBIN, GROSS
FELDMAN & DARBY, LLP


___/s/_____
Kevin M. Ringel, Esq.
Federal Bar No. 18503
481 N. Frederick Ave., Suite 300
Gaithersburg, MD 20877
Phone: (301) 670-7030
kringel@bsgfdlaw.com
Attorney for Claimant/Appellee

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| **MARY CLARK**, | : | |
| | : | |
| Plaintiff | : | Case NO. 13-CV-0184 ELH |
| | : | Judge Ellen Lipton Hollander |
| v. | : | |
| | : | |
| **HOWARD COUNTY GENERAL,** | : | |
| **HOSPITAL, *et al*,** | : | |
| | : | |
| Defendants. | : | |

## ORDER

UPON CONSIDERATION of Plaintiff's Opposition to Defendants' Motion to Strike Plaintiff's Expert, Russell Williams, M.D., and For Summary Judgment, and any reply filed thereto, it is this _____ day of _____, 2014 hereby

ORDERED that the Defendants' Motion to Strike Plaintiff's Expert, Russell Williams, M.D., and For Summary Judgment, be and hereby, is DENIED.

_____
Judge