UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| MARY CLARK, | : |
| Plaintiff | : |
| v. | : CASE NO. 13-CV-0184 JFM |
| HOWARD COUNTY GENERAL HOSPITAL, *et al.*, | : |
| Defendants. | : |

### DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S EXPERT, RUSSELL A. WILLIAMS, M.D., FROM OFFERING STANDARD OF CARE OPINIONS

**COME NOW** the Defendants, **Columbia Aesthetic Plastic Surgery, L.L.C., and Eric Chang, M.D.**, by and through counsel, **Larry D. McAfee, Esquire, Karen S. Karlin, Esquire and Gleason, Flynn, Emig & Fogleman, Chartered**, and respectfully submit this Motion in Limine to Preclude Plaintiffs' Expert, Russell A. Williams, M.D., from Offering Standard of Care Opinions. In support of their motion, Defendants refer the Court to the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

GLEASON, FLYNN, EMIG & FOGLEMAN, CHARTERED

By: */s/ Larry D. McAfee*
    Larry D. McAfee (Fed. Bar No.14519)
    lmcafee@gleason-law.com
    Karen S. Karlin (Fed. Bar No. 13388)
    kkarlin@gleason-law.com
    11 North Washington Street, Suite 400
    Rockville, Maryland 20850-4278
    301-294-2110

    ***Attorneys for Defendants Columbia Aesthetic Plastic Surgery, LLC and Eric Chang, M.D.***

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| MARY CLARK, | : |
| Plaintiff | : |
| | : CASE NO. 13-CV-0184 JFM |
| v. | : |
| | : |
| HOWARD COUNTY GENERAL HOSPITAL, *et al.*, | : |
| | : |
| Defendants. | : |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S EXPERT, RUSSELL A. WILLIAMS, M.D., FROM OFFERING STANDARD OF CARE OPINIONS

COME NOW Defendants Columbia Aesthetic Plastic Surgery, L.L.C., and Eric Chang, M.D., by and through counsel, Larry D. McAfee, Esquire, Karen S. Karlin, Esquire and Gleason, Flynn, Emig & Fogleman, Chartered, and respectfully submit this memorandum of points and authorities in support of Defendants' Motion in Limine to Preclude Plaintiffs' Expert, Russell A. Williams, M.D., from Offering Standard of Care Opinions.

### I. BACKGROUND[1]

#### A. Medical Background.

Mary Clark first became a patient of Dr. Eric Chang starting in 2006, when she presented for a consultation regarding bilateral breast reconstruction following a mastectomy on the right side in 2000. Subsequently, in February of 2006, a needle biopsy on the left breast revealed new cancer. From June 6, 2006 through May 16, 2007,

---

1. The factual and medical background set forth in this motion is only a brief description of Plaintiff's condition and the care and treatment rendered by Defendants. It is not intended to be a complete description of the medical care provided, but rather to provide the Court with a condensed overview of the medical treatment rendered to Plaintiff for purposes of ruling on the instant motion.

Dr. Chang performed five breast surgeries on Ms. Clark related to breast reconstruction with implants.

The time period at issue in this case began when Ms. Clark saw Dr. Chang on April 27, 2010 for follow-up relating to the previous surgeries. On May 24, 2010, Dr. Chang performed the surgeries at issue in this case at Howard County General Hospital. The Operative Report indicates that the following procedures were performed: (1) left breast capsulectomy for implant repositioning; (2) left breast implant exchange; (3) left breast implant exchange; (4) fat transfer from abdomen to left breast; (5) fat transfer from abdomen to right breast; and (6) liposuction of bilateral axillary areas for contouring of the lateral breast area. See Operative Report, attached hereto as **Exh. 1**. In layman's terms, capsules form around breast implants. Sometimes, as in this case, this can cause misshapen breasts, which requires the capsules to be removed and often, the implants to be replaced. This accounts for the first three listed procedures. For aesthetic reasons, Dr. Chang also removed fat cells from Ms. Clark's abdomen and used it to help position the breasts. Finally, he removed fat cells from under the arms to help with contouring the shape of the breasts.[2]

The Operative Report noted the following complication: "Burn to chest from overheating of the lighted retractor." Id. During the procedure, Dr. Chang placed the lighted retractor onto towels located on the patient's chest. Chang Dep. Tr. 8/28/13 at 38-39, attached hereto as **Exh. 2**. When he picked it up, he noted that the handle of the lighted retractor had heated to an unusual degree. Id. at 47. Immediately, he requested and was provided with new equipment, including a new attachment cord for the lighted retractor. Id. at 60.

---

2.   This layman's description has been provided only to assist the court in its understanding of the medicine involved. It is not material to the determination of the instant Motion.

Dr. Chang formed an opinion at the time of the surgery that the lighted retractor malfunctioned and became hotter than it should have become, resulting in the burns at issue. Id. at 38. When Dr. Chang noted that the lighted retractor was abnormally hot, he asked for a new retractor and a new cord to pair. Id. at 60. After the retractor was paired with a new cord, those pieces of equipment used together did not result in any further problems during the remainder of the surgery. Id. at 61-62. The new cord was a smaller diameter cord and did not cause heat when paired to the light handle he had used. Id. at 62, 65. Dr. Chang formed the impression that because the light handle got hot with the prior cord, the cord must have been mismatched. Id. at 62, 68-69. His belief that an improper cord was paired with the handle was confirmed by conversations he had with nurses and technicians in the hospital. Id. at 69-70.

During a follow-up office visit with Ms. Clark, on January 20, 2012, Dr. Chang disclosed to the patient the information he had regarding "the mismatch of the cord and the handle." Id. at 80. He disclosed to Ms. Clark both the information he had at the time of the operation when he realized the problem and the information he learned from a later meeting with the hospital. Dr. Chang told Ms. Clark that he believed that an improper cord was used for the operation and because of that, the light handle got abnormally hot, which is what ultimately caused her burns. Id. at 80-82.

Dr. Chang noted during his deposition that in normal use, the lighted retractor handle and adapter do not get hot, and he never has noticed the light handle getting hot anytime during his prior years of training or experience using this type of instrument. Id. at 54. He also stated that the lighted retractor is set up by the nurse and/or the tech in the operating room. Id. at 55-56, 67. He relies upon the hospital to determine which cord and which light handle he is given for the surgery. Id. at 67-68.

3

Linda Godwin, R.N., a nurse employed by Howard County General Hospital, confirmed during her deposition that Dr. Chang was not responsible for selecting the retractor and cord and placing them in the operating room. Godwin Dep. Tr. 8/26/13, attached hereto as **Exh. 3**, at 112, 117. Rather, one of the staff of Howard County General Hospital would select the retractor, pair it with a cord, and give it to Dr. Chang. Id. at 118. Ms. Godwin also confirmed there are cords with different diameters available for use with the retractors, and it was not Dr. Chang who chose the specific cord to be used in this case. Id. at 120-121. During the surgery, it was noted that the handle of the retractor was "extremely warm, warmer than normal." Id. at 29. She asked if they wanted her to change the light cord, and they said yes. She, therefore, proceeded to change the cord. Id. at 31. When she changed the cord during surgery, she chose a more narrow cord than the first cord. Id. at 125-126. After the cord was changed, she does not recall anyone saying the retractor got hot again after that point. Id. at 127.

Toni Hobert, a surgical tech also employed by Howard County General Hospital, was present in the operating room during the surgery performed by Dr. Chang on May 24, 2010. She confirmed during her deposition that she chose the retractor and the cord pre-operatively, and that she chose the larger diameter cord. Hobert Dep. Tr. 8/26/13 at 58-61, attached hereto as **Exh. 4**. She knows she chose the larger cord in this case because she always chose the larger cord. Id. at 60. She did not recall any express preference or request by Dr. Chang in this regard. Id. at 61.

Benedikta Vesnovsky, a certified surgical assistant employed by Howard County General Hospital who was present during surgery also provided deposition testimony in this matter. She confirmed during this deposition that after the cord was changed, no

4

additional problems arose with any part of the instrument getting hot again. Vesnovsky Dep. Tr. 8/26/13, attached hereto as **Exh. 5**, at 112.

### B.    **Discovery.**

Plaintiff filed her Rule 26(a)(2) Disclosures, on August 23, 2013, identifying one retained expert to testify on the issue of standard of care as to the surgery at issue performed by Dr. Chang, Russell A. Williams, M.D.[3] attached hereto as **Exh. 6**. On January 13, 2014, Dr. Williams prepared an Amended Report outlining all of his opinions in this matter, attached hereto as **Exh. 7**. According to Plaintiff's Rule 26(a)(2) Disclosures, Dr. Williams is board-certified in General Surgery and Vascular Surgery, and will be testifying "based on his background, knowledge, education, training and experience, the history provided by the Plaintiff, Mary Clark, as well as his review of the records of medical treatment." As to his opinions, Plaintiff's Rule 26(a)(2) Disclosures state as follows:

> Dr. Williams will testify that it was a breach in the standard of care to lay electro-surgical equipment, such as the lighted retractor, on the patient's body during surgery. When the lighted retractor was not in use, both the standard of care, as well as the manufacturer's instructions, require that it be placed out of the surgical field in a proper holster and/or a metal table. It is further a deviation from the standard of care to ensure that the settings on the lighted retractor were proper given the type of surgery that was being performed on Ms. Clark.

**Exh. 6**.

Defendants anticipate calling two medical experts to testify about standard of care and causation issues in this case, Robert K. Sigal, M.D., and Paul G. Ruff, IV, M.D., in

---

3.    In addition to Dr. Williams, Plaintiff previously also identified Dawn Leonard, M.D., to testify "in her capacity a [sic] hybrid expert and fact witness." However, Plaintiff has stated that she will not be calling Dr. Leonard as a witness in this matter. See Status Report filed March 14, 2014 § A [Docket No. 47].

5

addition to one engineering expert identified as a potential causation expert, Clyde Richard, Ph.D., P.E. Drs. Sigal and Ruff are board-certified plastic surgeons with expertise and experience in performing breast surgery, including the type of surgical procedures performed by Dr. Chang on Plaintiff Mary Clark on May 24, 2010. They also have expertise and experience utilizing a lighted retractor in the performance of these types of procedures. Sigal Dep. Tr. 3/26/14, attached hereto as **Exh. 8**, at 53-55; Ruff Dep. Tr. 3/5/14, attached hereto as **Exh. 9,** at 27, 43-44.

Contrary to the experts designated by Defendants, Drs. Sigal and Ruff, Dr. Williams conceded that he does not hold himself out to be an expert in the field of plastic and reconstructive surgery. Williams Depo Tr. 2/28/14, attached hereto as **Exh. 10**, at 33-34. Specifically, he has no experience with the procedures or instrument involved in this particular case.

> Q: I take it **you've never performed breast reconstruction surgery with tissue expanders**?
>
> A: No.
>
> Q: You have not?
>
> A: **That's right.**
>
> Q: And likewise, **you've never performed breast reconstruction surgery utilizing implants. Am I correct on that?**
>
> A: **Yes.**
>
> Q: And I take it **you've never performed a breast capsulectomy for implant repositioning?**
>
> A: **No, I have not.**
>
> Q: And am I also correct that **you've never performed a breast reconstruction with transfer of fat from the abdomen to the breast?**
>
> A: **Right.**
>
> . . .

> Q: Okay. But you can't – **you have not specifically used the lighted retractor that Dr. Chang used in this case; is that correct?**
>
> A: **Yes.**
>
> [Objection]
>
> Q: Have you ever seen, put your hands on one of these – the lighted retractor that was used by Dr. Chang in this case?
>
> A: No.
>
> [Objection]
>
> Q: And am I also correct that you **don't know how Dr. Chang specifically used this lighted retractor in connection with Ms. Clark's surgery; right?**
>
> [Objection]
>
> A: No. **Yes, you are right.**

**Exh. 10,** at 38-40 (emphasis added).

Defendants' expert, Dr. Ruff, explicitly stated in his report that based upon his extensive experience performing the type of procedures at issue and using a lighted retractor, "it is not uncommon or unreasonable to place a lighted retractor on the surgical field because they typically do not get so hot as to burn the skin or cause injury." Ruff Report, attached hereto as **Exh. 11,** at 5. Similarly, Dr. Sigal stated in his Report that "[i]t is [his] opinion that it is not uncommon or unreasonable to place the cord or handle of a lighted retractor on the surgical field because they typically do not get hot enough to burn the skin or cause injury. Leaving the retractor with its tip on a towel on the sterile field is common practice and was well within the standard of care." Sigal Report, attached hereto as **Exh. 12,** at 4-5.

Following the surgery at issue, Howard County General Hospital initiated an investigation to determine the cause of the burns sustained by Ms. Clark. Following this investigation, an engineer for the hospital authored a report, concluding in relevant part: "The direct causes of the incident were that the hand piece overheated due to the use of

7

an improper fiberoptic cable and that the hand piece was laid on the patient's chest." Adverse Event Investigation Report, attached hereto as **Exh. 13**, at 2. During the course of discovery, this report was produced to all parties. Defense expert Dr. Richard confirmed in his testimony that there was an improper connection that caused the overheating of the retractor. Richard Depo. Tr. 4/9/14, attached hereto as **Exh. 14,** at 40, 46.

## II. ARGUMENT

### A. Having Never Performed the Procedures at Issue in this Case, Dr. Williams Should Not Be Permitted to Render Standard of Care Opinions in this Matter.

The Federal Rules of Evidence allow for expert testimony by a witness with advanced "knowledge, skill, experience, training, or education" to offer opinion testimony if the expert's proffered testimony "will help the trier of fact to understand the evidence or determine a fact in issue." Fed. R. Evid. 702(a). Clarifying the rule, the Fourth Circuit has advised that "Under Federal Rule of Evidence 702, trial judges act as gatekeepers to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.' Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001) (internal citations omitted). Although District Courts are afforded wide latitude with issues of admissibility of expert testimony, the Fourth Circuit will reverse such decisions when an expert does "not possess 'scientific, technical or other specialized knowledge' that would assist the trier of fact, as required by Rule 702." Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799-800 (4th Cir. 1989).

A District Court in a neighboring jurisdiction precluded expert testimony by a surgeon who had, by her own admission, performed hundreds of tubal ligations, but had **not** performed any sterilization procedures using the laparoscopic cauterization technique

8

at issue in the case. Hartke v. McKelway, 526 F.Supp. 97 (D.D.C. 1981). Therefore, faced with a very similar issue as the instant case presents, the Court articulated the following:

> While Baerman [v. Reisinger, 363 F.2d 309 (D.C. Cir. 1966)] holds that a doctor need not be a specialist to testify, it does not remove the requirement that, in order to give an opinion on whether the defendant complied with the applicable standard of care, **the witness must be familiar with that standard**.

Id. at 101 (emphasis added)(additional internal citations omitted). Although the District Court for the District of Columbia does not fall within the Fourth Circuit, the Middle District of North Carolina has cited Hartke with approval. Wright v. United States, 280 F.Supp.2d 472, 480 (M.D.N.C. 2003). While the facts of Wright do not align with the instant case as closely as Hartke, its reasoning does.

> The facts of each case, however, determine whether expert testimony assists the trier of fact in that case. [citing Kopf v. Skyrm, 993 F.2d 374, 379 (4th Cir. 1993)] By Dr. Kaufman's own admission, his clinical limitations render him incapable of explaining how a nurse, anesthesiologist, or anyone else padding a patient could ascertain how much padding would be sufficient for a person of Ms. Wright's body type. **Accordingly, his testimony on this subject does not help the trier of fact understand the standard of care or resolve the question of its alleged violation in this case.**

Id. (emphasis added). In the instant case, Plaintiff's expert, Dr. Williams, does not possess sufficient knowledge or experience to render standard of care opinions, and therefore, his opinions will not aid the trier of fact.

Similar to the law analyzed in Hartke, Maryland law may not require an expert testifying against a physician-defendant to practice in precisely the same specialty field as the defendant, but it does require that an expert establishing the standard of care against a defendant be knowledgeable about matters sufficiently related to the medicine at issue in

9

the case.[4] See generally, Hinebaugh v. Garrett County Mem'l Hosp., 207 Md. App. 1, 51 A.3d 673 (2012); DeMuth v. Strong, 205 Md. App. 521, 45 A.3d 898 (2012). Maryland Courts have approved an expert in one medical specialty providing standard of care opinions against a doctor in a different specialty, but only in the limited circumstance where the facts of the case fall within an area of overlap between the two specialties. Harbaugh, 207 Md. App. at 23, 51 A.3d at 686 (discussing DeMuth). In the case *sub judice*, not only is Dr. Williams **not** a plastic surgeon, as is Dr. Chang, he has **never** performed the types of reconstruction surgeries at issue in this case, and has **never** used the lighted retractor in question.[5] Consequently, Dr. Williams' area of expertise does not overlap with the medicine at issue in this case, rendering Dr. Williams unqualified to offer standard of care opinions about Dr. Chang's use of the lighted retractor during the surgeries he performed on Ms. Clark.

---

4. The Fourth Circuit has reviewed questions of admissibility of medical experts under both federal and state law. While federal law should govern the admissibility of expert testimony, in a medical malpractice claim, the sufficiency of such testimony would be governed by state law. Creekmore v. Maryview Hosp., 662 F.3d 686, 690 (4th Cir. 2011). Thus, recognizing that "there are circumstances in which a question of admissibility of evidence is so intertwined with a state's substantive rule that the state rule…will be followed," the Creekmore Court considered the admissibility question before it under both federal and state law. Id. (quoting Hottle v. Beech Aircraft Corp., 47 F.3d 106, 110 (4th Cir. 1995) (additional internal citations omitted)).

5. It must be stressed that the paramount issue in this case is not how to use a light retractor, but rather, whether a reasonably prudent surgeon performing the surgery at issue would place the lighted retractor on the patient's chest during surgery when it is not in use. The evidence in this case from the plastic surgeons who actually perform the surgery is that by the nature of the surgery, the retractor is in use and out of use multiple times during the procedure in order to affect the necessary maneuvers for the surgery. The plastic surgery experts will testify that a plastic surgeon typically would not break the sterile field and place the retractor in a harness or on a Mayo stand, as Dr. Williams suggests, because it would be too arduous to break scrub and rescrub during the procedure. Dr. Williams cannot speak to when the retractor would be in use and when it would not be in use, or how arduous it would be to break scrub and re-scrub in order to place the retractor in a harness or on a Mayo stand because he has never performed the procedure at issue.

10

This Court has summarized the questions a court must ask when deciding whether two specialties are related as anticipated by Maryland law as follows:

> (1) What is the procedure or procedures at the source of the claim? (2) Is the procedure common to the two specialties? (3) What experience does the purported expert doctor have with this specific procedure? and (4) Is the standard of care applicable to the procedure common to both?

Jones v. Bagalkotakar, 750 F.Supp.2d 574, 581 (D.Md. 2010) (Williams, J.). In the instant case, the procedures in question are related to breast reconstruction, and are not common to both specialties. Typically, these types of procedures are performed by reconstructive surgeons only, and not by general surgeons. Consistent with this practice, Dr. Williams testified that he has never performed **any** of the procedures performed by Dr. Chang. **Exh. 10,** at 38. Having never worked with this particular retractor or performed these particular procedures, Dr. Williams fails to meet the first requirement of Rule 702 of the Federal Rules of Evidence in that he lacks sufficient specialized knowledge to aid the trier of fact in understanding the applicable standard of care.

Apparently, the fourth Jones factor, whether the standard of care is applicable to both specialties, led this Court to its previous ruling regarding Defendants' Motion to Strike Plaintiff's Expert Dr. Williams. Specifically, this Court found that "the ultimate opinion expressed by Dr. Williams – that a lighted retractor should not be placed on the body of a patient, is uncontroversial, regardless of the number of times that the lighted retractor was used." See Docket No. 55. Respectfully, this conclusion ignores the Fourth Circuit's guidance that the facts specific to any given case "determine whether expert testimony assists the trier of fact." Wright, 280 F.Supp.2d at 280 (citing Kopf v. Skyrm, 993 F.2d 374, 379 (4th Cir. 1993)). As Defendants' plastic and reconstructive surgery experts explained, the near continuous use of the lighted retractor in the procedures at

11

issue in this case made it impractical to repeatedly place the retractor outside of the field of surgery, and Dr. Chang's performance of the surgery at issue, therefore, was in compliance with the standard of care. See Sigal Dep. Tr., attached hereto as **Exh. 8**, at 62-63; see also id. at 80-82 (confirming his opinion, outlined in his Report, that "[t]his particular procedure requires the retractor to be inserted and removed from the operative field many times during its course. It is reasonable and customary to keep the lighted retractor readily available within the sterile field by resting it on the patient as long as the tip is placed safely on a towel" and explaining the safety purposes for having the lighted retractor within easy reach). Placement of the retractor outside the field of surgery is something more readily accomplished with a procedure that requires only one use of the retractor; Ruff Dep. Tr., attached hereto as **Exh. 9**, at 55-56 (explaining "continuous use" of lighted retractor during this procedure). Thus, the standard of care that Dr. Williams is familiar with is completely different from the standard of care that applies to the facts of the instant case. Accordingly, Plaintiff is unable to meet her burden of establishing the Jones factors regarding the admissibility of her proffered expert testimony as to the applicable standard of care.

The use and placement of the lighted retractor *in the context of this case* cannot be understood without knowledge of the technical aspects of the surgeries performed by Dr. Chang. Wright, supra. As such, Plaintiff's standard of care expert must have knowledge of, experience, and expertise with the reconstructive procedures performed in this matter to properly discuss the standard of care as it related to the use of the retractor during these specific procedures. A proper understanding of the specific issues involved in this case cannot be evaluated in the bubble of general surgery, as Plaintiff suggests.

**B.  Dr. Williams Should Be Precluded from Opining that a Lack of Personal Training for Burn Avoidance in the Operating Room Constituted a Breach of the Standard of Care.**

In his Report, Dr. Williams expressed the opinion that "[t]he defendants collectively lacked personal training on operating room fire and/or burns." In his deposition, taken some two months after Plaintiff filed a Stipulation of Dismissal as to Howard County General Hospital, Dr. Williams affirmed this opinion with the following testimony:

> Q:  Okay. So let's paraphrase that sentence just a little bit and say that Dr. Chang lacked personal training on operating room burns. What's the basis for your opinion that he lacked personal training?
>
> A:  I believe in his, uhm, deposition he says that he was never instructed on burns or on fires, some statement like that.
>
> . . .
>
> Q:  What is the training that you believe Dr. Chang was required to have in terms of doing this type of an operation using a lighted retractor?
>
> A:  I think with any fiberoptic device, risk of burns is something that you need to be aware of and take – perform the procedure in a way to prevent them happening.

Williams Dep. Tr. attached hereto as **Exh. 10**, at 70-71. Even if Dr. Chang lacked any training required necessary for healthcare providers using the operating room, it would not have been his duty to provide such training. Rather, the controller of the operating room, Howard County General Hospital, would be required to have provided any such training that proper conduct in its operating rooms required.[6]

---

6.  Plaintiff voluntarily dismissed Howard County General Hospital from this action on December 13, 2013 [Docket No. 41].

13

> To establish a claim for negligent training and supervision, a plaintiff must allege five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in training or supervising the employee as the proximate cause of the plaintiff's injuries.

Williams v. Wicomico County Bd. of Educ., 836 F.Supp.2d 387, (D.Md. 2011) (citing Maryland v. Jones, 197 Md. App. 638, 14 A.3d 1223, 1241 (2011)). No such claim exists in the case *sub judice*. As such, Dr. Williams should be precluded during trial from offering any opinion that Dr. Chang lacked particular training about burns in the operating room.

### III. CONCLUSION

Based upon the foregoing, Defendants Columbia Aesthetic Plastic Surgery, L.L.C., and Eric Chang, M.D., respectfully request that the Court grant Defendants' Motion in Limine to Preclude Plaintiffs' Expert, Russell A. Williams, M.D., from Offering Standard of Care Opinions.

Respectfully submitted,

GLEASON, FLYNN, EMIG & FOGLEMAN, CHARTERED

By: /s/ Larry D. McAfee
Larry D. McAfee (Fed. Bar No.14519)
lmcafee@gleason-law.com
/s/ Karen S. Karlin
Karen S. Karlin (Fed. Bar No. 13388)
kkarlin@gleason-law.com
11 North Washington Street
Suite 400
Rockville, Maryland 20850-4278
301-294-2110

*Attorneys for Defendants Columbia Aesthetic Plastic Surgery, LLC and Eric Chang, M.D.*

14

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of March 2015, a copy of the foregoing Defendants Columbia Aesthetic Plastic Surgery, L.L.C.'s and Eric Chang, M.D.'s Motion in Limine to Preclude Plaintiffs' Expert, Russell A. Williams, M.D., from Offering Standard of Care Opinions was electronically filed and served upon:

> Kenneth Berman, Esquire
> kberman@bsgfdlaw.com
> Berman, Sobin, Gross, Feldman & Darby, L.L.P.
> 481 N. Frederick Avenue, Third Floor
> Gaithersburg, Maryland 20877

/s/ Larry D. McAfee
Larry D. McAfee

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| MARY CLARK, | : |
| Plaintiff | : |
| | : CASE NO. 13-CV-0184 JFM |
| v. | : |
| HOWARD COUNTY GENERAL HOSPITAL, *et al.*, | : |
| Defendants. | : |

### ORDER PRECLUDING PLAINTIFFS' EXPERT, RUSSELL A. WILLIAMS, M.D., FROM OFFERING STANDARD OF CARE OPINIONS

UPON CONSIDERATION of Defendants' Motion in Limine to Preclude Plaintiffs' Expert, Russell A. Williams, M.D., from Offering Standard of Care Opinions, any Opposition thereto and the record herein, it is, this ____ day of March 2015, hereby

ORDERED that Defendants' Motion in Limine to Preclude Plaintiffs' Expert, Russell A. Williams, M.D., from Offering Standard of Care Opinions, be, and the same hereby, is GRANTED; and it is further

ORDERED that Plaintiffs' Expert, Russell A. Williams, M.D., is precluded from offering standard of care opinions at trial.

_____
J. Frederick Motz
United States District Court for the
District of Maryland (Northern Division)

Copies To:

Kenneth Berman, Esquire
Bonnie L. Portis, Esquire
Berkman, Sobin, Gross, Feldman & Darby
481 North Frederick Avenue
Gaithersburg, MD  20877

Larry D. McAfee, Esquire
Karen S. Karlin, Esquire
Gleason, Flynn, Emig & Fogleman, Chartered
11 North Washington Street, Suite 400
Rockville, MD 20850-4278