# Russell A. Williams MD, FACS

628 Calle Miramar
Redondo Beach, CA 90277-6446
*Professor of Surgery*
*University of California at Irvine*
E-mail: *rawillia@uci.edu*

---

January 13, 2014

Kenneth Berman, Esq.
Berman, Sobin, Gross, Feldman & Darby, LLP
481 N. Frederick Ave., Suite 300
Gaithersburg, Maryland 20877

**Re: Mary Clark v. Howard County General Hospital, et al.**

Dear Mr. Berman:

    Per your request, I am filing this amended report concerning my review of the above-captioned case. I previously agreed to review the above-captioned case and serve as an expert witness and to provide expert testimony. I have previously submitted a Certificate of Qualified Expert in this matter, as well as a Report concerning my findings and conclusions. I am now submitting an amended report per your request.

    Prior Testimony: I have testified as an expert on one other occasion in the past four years. However, this testimony was in the form of a deposition and not at the actual trial. The case was Reynoso v. Kaiser Permanente Riverside Medical Group, Arbitration No.: 9903. I do not know the ultimate outcome of the case, or if the case reached a resolution prior to trial.

    Compensation: For my services, I charge $400.00 per hour for a review of records. I charge $400.00 per hour for an in-person meeting or telephone conference. I charge $1,000.00 per deposition for the first hour or part thereof and $500.00 per subsequent hour or part thereof. For court or arbitration proceedings, I charge $5,000.00 per day or part thereof in addition to travel and accommodation costs.

    Qualifications: Please see my Curriculum Vitae and list of publications, attached hereto.


DEFENDANT'S EXHIBIT 7

I have considered and/or reviewed the following over the course of my involvement in this case:
1. The history provided by the Plaintiff, Mary Clark
2. The Amended Complaint
3. Photographs of Ms. Clarks' burns following the procedure
4. The Operation Manual of the lighted retractor used during Ms. Clark's procedure
5. The discovery provided by the parties to this case, including, but not limited to, Interrogatories, Requests for Admissions, and Requests for Production of Documents
6. Medical records from Dr. Chang
7. Medical records from Howard County General Hospital
8. The Depositions taken to date
9. My background, knowledge, education, training, and experience
10. The Opinions of the other experts involved in this case

Factual Background: Ms. Clark and Dr. Chang have a doctor/patient history dating back to 2006, when Ms. Clark first came under the care of Dr. Chang. Ms. Clark had a right-breast mastectomy in 2000 (performed by a different doctor) and eventually visited with Dr. Chang regarding breast reconstruction in 2006. Up until the date of the procedure in question, Dr. Chang had performed several procedures on Ms. Clark, five in total. These five previous procedures were without incident. While I have reviewed the records concerning the pre-2010 procedures, they are not relevant to my task of providing an opinion as to the May 24, 2010 procedure.

Relevant to the instant action, is the surgery which was performed by Dr. Chang on May 24, 2010. Dr. Chang's Operative Report details the procedures performed as: (1) Left breast capsulectomy for implant repositioning; (2) Left breast implant exchange; (3) Right breast implant exchange; (4) Far transfer from abdomen to left breast; (5) Fat transfer from abdomen to right breast; and (6) Liposuction of bilateral axillary areas for contouring of the lateral breast area.

As the Operative Report notes, there was a complication with the procedure. The Operative Report reads "Burn to chest from overhearing of lighted retractor." According to Dr. Chang and the other members of the operating team that were present during the procedure, Dr. Chang placed the lighted retractor on Ms. Clark's chest during the procedure. The Operative Report specifically states:

> Upon using the lighted retractor to allow for visualization of the cavities, it was found that there had been burns from the retractor heating through the drape to the skin. Some of these burns were full-thickness in nature.... I felt that this would allow for better healing rather than allowing these deep burns to heal in on their own

It would appear that at some point during the procedure, Dr. Chang had placed the lighted retractor on the drape, which was directly on top of and covering Ms. Clark's chest. As a result, the heat being produced from the lighted retractor passed through the drape and came into direct contact with Ms. Clark's bare chest, causing severe burns. The

Operative Report also indicates that Dr. Chang tended to the burns upon first noticing what had happened.

The above was confirmed after reviewing the depositions of Dr. Chang, Linda Godwin, R.N., Toni Herbert, and Benedikta Vesnovky. In fact, based on what I have reviewed, it is undisputed that Dr. Chang placed the lighted retractor on Ms. Clark's chest during the procedure.

There is lengthy discussion in the above-mentioned deposition transcripts concerning which retractor was used and which cord was used. There is also discussion that the cord had been changed in the middle of the surgical procedure because the retractor had become hotter than they believed it should be.

<u>Summary of opinions:</u> During the May 24, 2010 breast reconstruction surgery, Ms. Clark suffered burns to her chest when a lighted retractor was placed in the surgical field during the procedure by Dr. Chang. The burns were discovered after completion of the surgical procedure.

The Defendants breached the applicable standards of medical care as to Ms. Clark when they created a favorable environment for a surgical burn and in not taking steps to lessen the chances of such an event from occurring. This was due to Dr. Chang's action of placing the lighted retractor on Ms. Clark's body during the May 24, 2010 surgical procedure. The negligence of each of the Defendants directly and proximately caused Ms. Clark to suffer severe burns resulting in medical bills, scaring, significant pain and suffering, and disfigurement. I base these opinions on my many years of clinical experience and review of all materials previously mentioned.

The Defendants collectively lacked personnel training on operating room fire and/or burns, used improper surgical techniques, and failed to have proper communication between all of the operating room staff during the surgical procedure. Had the Defendants had proper training and been following proper surgical techniques, the lighted retractor would not have been placed on Ms. Clark's body during the procedure.

The standard of medical care required that the Defendants ensured that the surgical field, including Ms. Clark's body, was free from all surgical fire and burn hazards. Specifically, the surgeon, Dr. Chang, should have been aware of the burn hazards that the lighter retractor presented during the surgical procedure. Further, the standard of care required that the surgeon and operating room staff be attentive to the location of the lighted retractor within the surgical field throughout the procedure. This is because the lighted retractor produces heat capable of causing operating room fires as well as burns when come into contact with the human body.

In particular, it is a breach of the standard of care to lay electro-surgical equipment, such as a lighter retractor, on the patient's body during a surgical procedure. When electro-surgical equipment, such as a lighted retractor, is not in use, both the standard of care, as well as the manufacturer's instructions, require that it be placed out of the surgical field in a proper holster and/or a metal table. I base these opinions on my many years of clinical experience and review of all materials previously mentioned.

It was also a further deviation from the standard of care to ensure that the settings on the lighted retractor were proper given the nature of the surgery that was to be performed on Ms. Clark by Dr. Chang.

I hold my opinions, as stated in this Report, to be within a reasonable degree of medical certainty.

Conclusions: The Defendants breached the applicable standard of medical care when the lighted retractor was placed on Ms. Clark's body during the surgical procedure. The Defendants had a duty to protect Ms. Clark from potential burns throughout the surgical procedure by placing the lighted retractor in a proper holster or on a metal table when not in use. Had the Defendants complied with the applicable standard of care and not placed the dangerous, heated instrument on Ms. Clark's body during the surgical procedure, she would not have otherwise sustained such burns which resulted in permanent scarring.

Defendant Chang submits that the instrument that was used during the surgical procedure was malfunctioning and should not have reached the temperature that it did. Therefore, according to Dr. Chang, he could not have known that the lighted retractor had the potential to burn Ms. Clark. Regardless of whether or not the lighted retractor was malfunctioning, the standard of care requires that the lighted retractor be stored in a proper holster or on a metal table, and never on the patient's person. I base all of my opinions here on the facts in this case and my many years of clinical experience.

I hold my opinions, as stated in this Report, to be within a reasonable degree of medical certainty.

Sincerely,

*[signature]*

Russell A. Williams, M.D.