UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| MARY CLARK, | : |
| Plaintiff | : |
| v. | : CASE NO. 13-CV-0184 JFM |
| HOWARD COUNTY GENERAL HOSPITAL, *et al.*, | : |
| Defendants. | : |

### DEFENDANTS' MOTION IN LIMINE TO PRECLUDE ADMISSION OF OPERATION MANUAL FOR LIGHTED RETRACTOR AT ISSUE

**COME NOW the Defendants, Columbia Aesthetic Plastic Surgery, L.L.C., and Eric Chang, M.D.**, by and through counsel, **Larry D. McAfee, Esquire, Karen S. Karlin, Esquire and Gleason, Flynn, Emig & Fogleman, Chartered**, and respectfully submit this Motion in Limine to Preclude Admission of Operation Manual for Lighted Retractor at Issue. In support of their motion, Defendants refer the Court to the accompanying Memorandum of Points and Authorities.

Respectfully submitted,

GLEASON, FLYNN, EMIG & FOGLEMAN, CHARTERED

By: __/s/ Larry D. McAfee__
    Larry D. McAfee (Fed. Bar No.14519)
    lmcafee@gleason-law.com
    Karen S. Karlin (Fed. Bar No. 13388)
    kkarlin@gleason-law.com
    11 North Washington Street, Suite 400
    Rockville, Maryland 20850-4278
    301-294-2110

    *Attorneys for Defendants Columbia Aesthetic Plastic Surgery, LLC and Eric Chang, M.D.*

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| MARY CLARK, | : |
|     Plaintiff | : |
| | :   CASE NO. 13-CV-0184 JFM |
| v. | : |
| | : |
| HOWARD COUNTY GENERAL HOSPITAL, *et al.*, | : |
| | : |
|     Defendants. | : |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION IN LIMINE TO PRECLUDE ADMISSION OF OPERATION MANUAL FOR LIGHTED RETRACTOR AT ISSUE**

COME NOW the Defendants, Columbia Aesthetic Plastic Surgery, L.L.C., and Eric Chang, M.D., by and through counsel, Larry D. McAfee, Esquire, Karen S. Karlin, Esquire and Gleason, Flynn, Emig & Fogleman, Chartered, and respectfully submit this memorandum of points and authorities in support of Defendants' Motion in Limine to Preclude Admission of Operation Manual for Lighted Retractor at Issue.

**I. BACKGROUND**[1]

**A. Medical Background.**

Mary Clark first became a patient of Dr. Eric Chang starting in 2006, when she presented for a consultation regarding bilateral breast reconstruction following a mastectomy on the right side in 2000. Subsequently, in February of 2006, a needle biopsy on the left breast revealed new cancer. From June 6, 2006 through May 16, 2007,

---

1. The factual and medical background set forth in this motion is only a brief description of Plaintiff's condition and the care and treatment rendered by Defendants. It is not intended to be a complete description of the medical care provided, but rather to provide the Court with a condensed overview of the medical treatment rendered to Plaintiff for purposes of ruling on the instant motion.

Dr. Chang performed five breast surgeries on Ms. Clark related to breast reconstruction with implants.

The time period at issue in this case began when Ms. Clark saw Dr. Chang on April 27, 2010 for follow-up relating to the previous surgeries. On May 24, 2010 at Howard County General Hospital, Dr. Chang performed the surgeries at issue in this case. The Operative Report indicates that the following procedures were performed on that date: (1) left breast capsulectomy for implant repositioning; (2) left breast implant exchange; (3) left breast implant exchange; (4) fat transfer from abdomen to left breast; (5) fat transfer from abdomen to right breast; and (6) liposuction of bilateral axillary areas for contouring of the lateral breast area. See Operative Report, attached hereto as Exh. 1. In layman's terms, capsules form around breast implants. Sometimes, as in this case, this can cause misshapen breasts, which requires the capsules to be removed and often, the implants to be replaced. This accounts for the first three listed procedures. For aesthetic reasons, Dr. Chang also removed fat cells from Ms. Clark's abdomen and used it to help position the breasts. Finally, he removed fat cells from under the arms to help with contouring the shape of the breasts.[2]

The Operative Report noted the following complication: "Burn to chest from overheating of the lighted retractor." Id. During the procedure, Dr. Chang placed the lighted retractor onto towels located on the patient's chest. Chang Dep. Tr. 8/28/13 at 38-39, attached hereto as Exh. 2. When he picked it up, he noted that the handle of the lighted retractor had heated to an unusual degree. Id. at 47. Immediately, he requested

---

[2] This layman's description has been provided only to assist the court in its understanding of the medicine involved. It is not material to the determination of the instant Motion.

2

and was provided with new equipment, including a new attachment cord for the lighted retractor. Id. at 60.

Dr. Chang formed an opinion at the time of the surgery that the lighted retractor malfunctioned and became hotter than it should have become, resulting in the burns at issue. Id. at 38. When Dr. Chang noted that the lighted retractor was abnormally hot, he asked for a new retractor and a new cord to pair. Id. at 60. After the retractor was paired with a new cord, those pieces of equipment used together did not result in any further problems during the remainder of the surgery. Id. at 61-62. The new cord was a smaller diameter cord and did not cause heat when paired to the light handle he had used. Id. at 62, 65. Dr. Chang formed the impression that because the light handle got hot with the prior cord, the cord must have been mismatched. Id. at 62, 68-69. His belief that an improper cord was paired with the handle was confirmed by conversations he had with nurses and technicians in the hospital. Id. at 69-70.

During a follow-up office visit with Ms. Clark on January 20, 2012, Dr. Chang disclosed to the patient the information he had regarding "the mismatch of the cord and the handle." Id. at 80. He disclosed to Ms. Clark both the information he had at the time of the operation when he realized the problem, and the information he learned from a later meeting with the hospital. Dr. Chang told Ms. Clark that he believed that an improper cord was used for the operation and because of that, the light handle got abnormally hot, which is what ultimately caused her burns. Id. at 80-82.

Dr. Chang noted during his deposition that in normal use, the lighted retractor handle and adapter do not get hot, and he never has noticed the light handle getting hot anytime during his prior years of training or experience using this type of instrument. Id.

3

at 54. He also stated that the lighted retractor is set up by the nurse and/or the tech in the operating room. Id. at 55-56, 67. He relies upon the hospital to determine which cord and which light handle he is given for the surgery. Id. at 67-68.

Linda Godwin, R.N., a nurse employed by Howard County General Hospital, confirmed during her deposition that Dr. Chang was not responsible for selecting the retractor and cord and placing them in the operating room. Godwin Dep. Tr. 8/26/13, attached hereto as Exh. 3, at 112, 117. Rather, one of the staff of Howard County General Hospital would select the retractor, pair it with a cord, and give it to Dr. Chang. Id. at 118. Ms. Godwin also confirmed there are cords with different diameters available for use with the retractors, and it was not Dr. Chang who chose the specific cord to be used in this case. Id. at 120-121. During the surgery, it was noted that the handle of the retractor was "extremely warm, warmer than normal." Id. at 29. She asked if they wanted her to change the light cord, and they said yes. She therefore proceeded to change the cord. Id. at 31. When she changed the cord during surgery, she chose a more narrow cord than the first cord. Id. at 125-126. After the cord was changed, she does not recall anyone saying the retractor got hot again after that point. Id. at 127.

Toni Hobert, a surgical tech also employed by Howard County General Hospital, was present in the operating room during the surgery performed by Dr. Chang on May 24, 2010. She confirmed during her deposition that she chose the retractor and the cord pre-operatively, and that she chose the larger diameter cord. Hobert Dep. Tr. 8/26/13 at 58-61, attached hereto as Exh. 4. She knows she chose the larger cord in this case because she always chose the larger cord. Id. at 60. She did not recall any express preference or request by Dr. Chang in this regard. Id. at 61.

4

Benedikta Vesnovsky, a certified surgical assistant employed by Howard County General Hospital who was present during surgery also provided deposition testimony in this matter. She confirmed during this deposition that after the cord was changed, no additional problems arose with any part of the instrument getting hot again. Vesnovsky Dep. Tr. 8/26/13, attached hereto as Exh. 5, at 112.

### B.    Discovery.

Plaintiff's expert, Russell Williams, M.D., testified during his deposition that the manufacturer of the lighted retractor at issue in this case allegedly provided documentation "saying don't put this in contact with the patient." Williams Dep. Tr. 68, Exh. 6. Other than acknowledging that the operation manual was part of the materials he reviewed prior to forming all of his opinions in the case, this was the only mention of the manual during Dr. Williams' deposition.

The Amended Report of Dr. Williams, dated January 13, 2014, contains one statement that directly references the operation manual, and another that may reference the operation manual. First, he stated "both the standard of care, **as well as the manufacturer's instructions**, require that [the lighted retractor] be placed out of the surgical field in a proper holster and/or metal table." Williams Amended Report p. 4 (emphasis added). Subsequently, he stated "It was also a further deviation from the standard of care to ensure that the settings on the lighted retractor were proper given the nature of the surgery that was to be performed on Ms. Clark by Dr. Chang."[3] Id.

---

3.   It is notable that this opinion was not rendered by Dr. Williams during his deposition, and there is no evidence that the retractor overheated during the surgery at issue due to improper settings.

5

As set forth in detail below, there is no factual basis for admission of the Operation Manual for the lighted retractor in this case. Therefore, this Motion in Limine to Preclude Admission of Operation Manual for Lighted Retractor at Issue should be granted.

## II.  ARGUMENT

In a diversity case, federal courts are instructed to apply the substantive law of the state in which the injury took place while interpreting procedural questions under federal law. Bryte, ex. rel. v. American Household, Inc., 429 F.3d 469, 475-76 (4th Cir. 2005). Thus, a plaintiff in a medical malpractice action must submit evidence that (1) demonstrates the standard of care applicable to the facts of the case, (2) proves that the defendant violated the standard of care, and (3) causally connects the plaintiff's injuries to the violation. Fitzgerald v. Manning, 679 F.2d 341, 346 (4th Cir. 1982) (internal citations omitted). All of these elements of the plaintiff's claim must be analyzed under Maryland law in this case, while any evidentiary rulings must be considered under federal law. Id. "In order to establish a standard of medical care as well as a violation of such standard, expert testimony is required." Fitzgerald, 679 F.2d at 347; see also Meda v. Brown, 318 Md. 418, 428, 569 A.2d 202, 206-07 (1990).

### A. The Operation Manual Constitutes Inadmissible Hearsay.

Hearsay is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers into evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Additionally, "[h]earsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R.

6

Evid. 802. The hearsay rule is designed to exclude statements offered to prove the truth of the facts contained in the statement, as opposed to obtaining those statements directly from the declarant.

With regard to the Operation Manual at issue, no custodian of records has been identified to authenticate such material, and it does not obviously fall within any recognized exception to the hearsay rule. See generally Fed. R. Evid. 803. Consequently, the Operation Manual constitutes inadmissible hearsay.

### B. No Expert Has Established a Link Between the Operation Manual and the Standard of Care Applicable to this Case.

Even if Plaintiff overcomes the hearsay impediments discussed above, she cannot establish that the Operation Manual will assist, rather than confuse, the trier of fact. Except in the rarest of cases, plaintiffs alleging medical malpractice claims must establish the applicable medical standard of care, and any violation of that standard, through expert testimony. Fitzgerald, 679 F.2d at 347; see also Meda v. Brown, 318 Md. 418, 428, 569 A.2d 202, 206-07 (1990). In the instant case, Plaintiff's expert Dr. Williams has opined that the lighted retractor used by Dr. Chang never should be placed on the patient when not actively in use under any circumstances. See Amended Report p. 4 ("it is a breach of the standard of care to lay electro-surgical equipment, such as a lighter [*sic*] retractor on the patient's body during a surgical procedure"). Although he acknowledged that he had read language similar to this opinion in the Operation Manual, Dr. Williams never developed in his report or his deposition testimony any connection between the manual and his opinion on the standard of care. Accordingly, this document is not appropriate to put into evidence, as it could only serve to confuse the jury without any expert testimony linking the document to the facts of the instant case.

7

### C. No Expert Has Established that Dr. Chang Was Aware, or Reasonably Should Have Been Aware, of the Contents of the Operation Manual.

In addition to the specific reference to the Operation Manual in his Amended Report and deposition, Dr. Williams offered an opinion in his Amended Report that less obviously references the Operation Manual. Namely, the opinion states "It was also a further deviation from the standard of care to ensure that the settings on the lighted retractor were proper given the nature of the surgery that was to be performed on Ms. Clark by Dr. Chang." See Amended Report p. 4. However, no expert witness in this case has provided testimony that Dr. Chang ever was provided this Operation Manual, or any other information that would have enabled him to ascertain "that the settings on the lighted retractor were proper given the nature of the surgery." To the contrary, the testimony provided by the medical staff present in the operating room on the date in question firmly established that at Howard County General Hospital, the surgeon was **not** responsible for setting up the operating room prior to surgery, and/or obtaining the medical devices used during surgery. See testimony of Linda Godwin, R.N, Toni Hobert, surgical tech, and Benedikta Vesnovsky, surgical assistant as set forth in Section I(A). Moreover, no one has testified that Dr. Chang breached the standard of care in relying upon this system.[4]

The only opinion rendered by Dr. Williams during his deposition that Dr. Chang arguably should be held liable for the hospital's practice of having hospital staff set up the equipment in the operating room was that Dr. Chang was the "caption of the ship," a theory that is not recognized under Maryland law. Williams Dep. Tr. at 65 ("the leader

---

4. Plaintiff voluntarily dismissed Howard County General Hospital from this action on December 13, 2013 [Docket No. 41].

8

of the team, the captain of the ship was Dr. Chang, the defendant"). Consequently, this opinion is without merit, since the "Captain of the Ship" doctrine does not have "any vitality in Maryland." Butler-Tulio v. Scroggins, 139 Md. App. 122, 157, 774 A.2d 1209 (2001). In Franklin v. Gupta, 81 Md. App. 345, 567 A.2d 524 (1990), the court examined the purpose and scope of "the captain of the ship." Id. at 366, 567 A.2d 524. In that case, the court rejected the captain of the ship theory of liability, holding that in Maryland the "correct doctrine to apply is the traditional 'borrowed servant' rule.'" Id. (See also Butler-Tulio v. Scroggins, 139 Md. App. 122,155-156, 774 A.2d 1209 (2001)).

The facts of this case demonstrate that Dr. Chang was not responsible for setting up the equipment he used during the surgery at issue. Therefore, he would not need to be familiar with any aspect of the equipment, beyond how to use the equipment properly while operating on patients. No expert has testified that Dr. Chang is liable for performing surgery in an operating room set up by the hospital's staff. No expert has testified that Dr. Chang had access to, or reasonably should have had access to, materials relating to the surgical equipment that would have enabled him "to ensure that the settings on the lighted retractor were proper given the nature of the surgery that was to be performed on Ms. Clark by Dr. Chang." Amended Report p. 4. Accordingly, Plaintiff has failed to provide any basis to support admission of the Operation Manual.

### III.  CONCLUSION

Based upon the foregoing, Defendants Columbia Aesthetic Plastic Surgery, L.L.C., and Eric Chang, M.D., respectfully request that the Court grant Defendants' Motion in Limine to Preclude Admission of Operation Manual for Lighted Retractor at Issue.

Respectfully submitted,

GLEASON, FLYNN, EMIG & FOGLEMAN, CHARTERED


By:   */s/ Larry D. McAfee*
     Larry D. McAfee (Fed. Bar No.14519)
     lmcafee@gleason-law.com
     Karen S. Karlin (Fed. Bar No. 13388)
     kkarlin@gleason-law.com
     11 North Washington Street, Suite 400
     Rockville, Maryland 20850-4278
     301-294-2110

***Attorneys for Defendants Columbia Aesthetic Plastic Surgery, LLC and Eric Chang, M.D.***


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of March, 2015, a copy of the foregoing Defendants Columbia Aesthetic Plastic Surgery, L.L.C.'s and Eric Chang, M.D.'s Motion in Limine to Preclude Admission of Operation Manual for Lighted Retractor at Issue was electronically filed and served upon:

Kenneth Berman, Esquire
kberman@bsgfdlaw.com
Berman, Sobin, Gross, Feldman & Darby, L.L.P.
481 N. Frederick Avenue, Third Floor
Gaithersburg, Maryland 20877


                                                */s/ Larry D. McAfee*
                                                Larry D. McAfee

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| MARY CLARK, | : |
| Plaintiff | : |
| | : CASE NO. 13-CV-0184 JFM |
| v. | : |
| HOWARD COUNTY GENERAL HOSPITAL, *et al.*, | : |
| Defendants. | : |

### ORDER PRECLUDING ADMISSION OF OPERATION MANUAL FOR LIGHTED RETRACTOR

UPON CONSIDERATION of Defendants' Motion in Limine to Preclude Admission of Operation Manual for Lighted Retractor at Issue, any Opposition thereto and the record herein, it is, this _____ day of _____, 2015, hereby

ORDERED that Defendants' Motion in Limine to Preclude Admission of Operation Manual for Lighted Retractor at Issue, be, and the same hereby, is GRANTED; and it is further

ORDERED that the Operation Manual for the lighted retractor at issue in this case is precluded from evidence at trial.

_____
J. Frederick Motz
United States District Court for the
District of Maryland (Northern Division)

1

Copies To:

Kenneth Berman, Esquire
Bonnie L. Portis, Esquire
Berkman, Sobin, Gross, Feldman & Darby
481 North Frederick Avenue
Gaithersburg, MD  20877

Larry D. McAfee, Esquire
Karen S. Karlin, Esquire
Gleason, Flynn, Emig & Fogleman, Chartered
11 North Washington Street, Suite 400
Rockville, MD 20850-4278